UNITED STATES of America

v.

Rosemary LOUGHERY.

Crim. No. 87–0226–02.

United States District Court, District of Columbia.

May 25, 1989.

Lisa Gok, Asst. U.S. Atty., Washington, D.C., for U.S.

Edward F. Borden, Jr., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

JACKSON, District Judge.

### I.

Defendant Rosemary Loughery appears before the Court on her second motion to be allowed to withdraw her guilty plea to a single count of a ten-count indictment.[1] The offense carries a maximum penalty of five years in prison and a $250,000 fine. Because she has already been sentenced (to two years' imprisonment), her motion is made pursuant to Fed.R.Civ.P. 32(d) and 28 U.S.C. § 2255. She contends that she is a victim of the ineffective assistance of her counsel.

The indictment, issued by the grand jury on May 26, 1987, charged Loughery and another with one count of conspiracy, 18 U.S.C. § 371, to violate the Arms Export Control Act, 22 U.S.C. § 2778(a), and nine counts of mail and wire fraud.[2] Ultimately, a plea bargain was struck whereby defendant agreed to plead guilty to the single conspiracy count, and the government agreed, among other things, to dismiss the several mail and wire fraud counts. The guilty plea was entered in open court on August 7, 1987, in accordance with Fed.R. Civ.P. 11.

Unbeknownst to defendant and her counsel at the time, on June 24, 1987, the United States Supreme Court had decided *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987) the effect of which, the government now concedes, was to invalidate the mail and wire fraud counts with which both defendants had been charged.[3] Loughery's attorney's failure to apprise her of the *McNally* case prior to the entry of her plea, and, thereafter, his failure to move promptly to withdraw the guilty plea while she awaited sentencing, is the basis of her ineffective assistance claim.

To prove ineffective assistance of counsel warranting relief from a criminal conviction, a defendant must show that 1) counsel's performance fell below an "objective standard of reasonableness," and 2) there exists a "reasonable probability" that, but for counsel's errors, the result of the proceeding would have been different, a "reasonable probability" being one sufficient to undermine confidence in the outcome. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984). *Strickland* was a challenge to the quality of counsel's performance in a capital sentencing proceeding. One year later the Supreme Court extended *Strickland*'s two-part test to challenges to guilty pleas allegedly entered upon bad legal advice. *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Specifically, in *Hill* the Supreme Court stated that to satisfy the second (i.e., the "prejudice" to the accused) element of the test, a defendant who repents of his guilty plea must show that there is a "reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.... This assessment, in turn, will depend in large part on a prediction whether the [absence of error by counsel] likely would have changed the outcome of a trial." 474

---

**1.** Loughery's first motion to withdraw her guilty plea was made immediately prior to her sentencing, and after learning her co-defendant had received a sentence of imprisonment for a period of 20 months to five years. Her motion was denied and is now on appeal.

**2.** Count One of the indictment charged a conspiracy to supply aircraft radio navigation beacons to the Syrian Arab Republic without a valid export license from the U.S. Department of State. The mail and wire fraud counts,

Counts Two through Ten, charged use of the mails and telephones to defraud the United States of its right to implement its foreign policy "free from stealth, chicanery, false statements, fraud and deceit."

**3.** *McNally* held that the federal mail fraud statute, 18 U.S.C. § 1341, "protects property rights, but does not refer to the intangible right of the citizenry to good government." 107 S.Ct. at 2879.

U.S. at 59, 106 S.Ct. at 370.[4]

## II.

Addressing the latter element, the government contends that the Court is required to assess the merits of the prosecution's case, and determine whether an acquittal would be a likely result of a trial. The defendant argues that the Court's inquiry should be limited to a determination of whether, if properly assisted by counsel, she would have persisted in her not-guilty plea.

Loughery says that the major incentive for her decision to plead guilty was the opportunity to "minimize her exposure" (to imprisonment and fines) by eliminating nine of the ten counts. When she discovered that the counts to be dismissed pursuant to the plea agreement charged no federal crimes after *McNally*, she decided she wanted to stand trial on the conspiracy count, told her attorney so, and reluctantly agreed, on his advice, to defer her filing of a motion to withdraw her guilty plea until after learning whether her co-defendant had been sentenced to prison.

There is evidence in the record from which to credit Rosemary Loughery's present assertion that the *McNally* decision alone, had she known about it, would have induced her to chance a trial on the conspiracy count. There is also evidence, however, to the effect that her initial decision to plead guilty was a "voluntary and intelligent choice", for a number of reasons, of the less onerous of the unattractive options open to her at the time. *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).

The attorney, who Loughery alleges was ineffective in his representation of her, asserts that there were significant other considerations, all of which she discussed with him, in reaching her decision to plead guilty, and that it was *her* decision, not his, to do so. He informed her, accurately, that neither her own belief in her innocence, nor her innocence in fact, assured an acquittal at trial.[5] Loughery was also concerned, he says (and she concedes), about a lengthy and costly trial, and the attendant publicity which could embarrass her friends and family. The government had agreed, says the attorney, to ignore certain other suspect activities which could have resulted in her prosecution for unrelated offenses in Pennsylvania and New Jersey. And Loughery was made aware by him that her acknowledgement of her guilt, coupled with the government's perception of her culpability as being less than that of her co-defendant, gave some reason to hope for a minimal sentence or probation.

To the extent the defendant's innocence or guilt is relevant at this stage, it is Rosemary Loughery's claim that she initially went into business with her co-defendant to sell "paint" to overseas customers, later to sell "oil," and still later other miscellaneous merchandise. She borrowed heavily to invest in the enterprise, and was, she acknowledges, a "contact person" for prospective suppliers and customers when her co-defendant was out of the country. But when her co-defendant once mentioned to her that certain transactions they were contemplating might be criminal, she says, she protested to him that she did not want to do anything illegal and was reassured by him that they would "stick to only legal deals."

On the other hand, there is again evidence to doubt that there is a reasonable probability that the outcome of a trial would have been an acquittal. The conspiracy count charged Loughery and her co-defendant with a scheme to procure high-technology aircraft radio navigation beacons for clandestine shipment to the Syrian Arab Republic, utilizing false "end user certificates" to conceal the ultimate desti-

---

**4.** The Court took evidence on those issues as they are presented by this case on November 4, 1988, and January 13 and 18, 1989.

**5.** The attorney was, as he conferred with her, cognizant of the general nature and strength of the government's case, having appeared for Loughery at the preliminary hearing, and he had unsuccessfully negotiated with the prosecutor, both before and after indictment, for a reduction of the charges to a misdemeanor, or for their dismissal, in return for Loughery's cooperation.

nation of the equipment. The conspiracy allegedly persisted from March through November, 1986. The government's "Factual Memorandum in Support of Guilty Plea," submitted as its offer of proof when Loughery entered her guilty plea (and which she acknowledged to be factually correct), describes her as actively engaging in multiple meetings and conversations concerning ventures to supply recipients in such countries as Iran and Libya, as well as Syria, with military hardware (radar equipment, anti-aircraft missiles, and spare parts for fighter planes and tanks—not "paint" or "oil") in a capacity far more participatory than as an "investor," a "secretary" (as Loughery says she once viewed herself), or "contact person."

The government's evidence would have come principally from two undercover U.S. Customs Service special agents who negotiated and planned the transactions with Loughery and her co-defendant. Their testimony would have been corroborated by tape recordings they made of conversations with her and her co-defendant (who was also a co-conspirator) which suggest that Loughery was a fully engaged principal in the scheme, and with knowledge of the artifices required to conceal its illegal nature.[6]

### III.

But, assuming—a finding being unnecessary for the present—that Loughery had been determined to go to trial from the moment she learned of *McNally*, and that a jury could have a reasonable doubt as to her guilt, the Court is nevertheless unable to find that her attorney's performance fell below an ascertainable "objective standard of reasonableness" in the circumstances. There is no evidence that reasonably competent defense counsel would be compelled by a recognized standard of skill, care or diligence to have done other than her own attorney did. None of the advice he gave her was manifestly incorrect, and the significance of the *McNally* case for Loughery's purposes is debatable.

Neither the prosecutor nor counsel for either defendant immediately discerned the fact that the *McNally* case mandated dismissal of the mail and wire fraud counts. By the time it appeared to all that it did, Loughery's attorney concluded it to be of no practical significance for her; the plea bargain had already eliminated her exposure to them. It also foreclosed the possibility of a superseding indictment charging offenses under other statutes, or collateral prosecution on other charges.

Moreover, although she did not escape a sentence of confinement altogether, the sentence she did receive is less than half the maximum to which she would have been subject had she been convicted at trial of the conspiracy count alone. To that extent, at least, the strategy to which her attorney guided her was successful; her guilty plea and subsequent cooperation with the prosecutors were reflected in the sentence imposed. She is simply disappointed that the consideration for her plea bargain ultimately proved to be of less value to her than she had originally hoped.

For the foregoing reasons, therefore, the Court concludes that defendant Loughery's showing is insufficient to justify the withdrawal of her guilty plea, and it is, this 25th day of May, 1989,

ORDERED, that the motion of the defendant Loughery to withdraw her guilty plea is denied; and it is

FURTHER ORDERED, that the defendant Loughery report to her place of confinement as directed by the U.S. Bureau of Prisons; and it is

FURTHER ORDERED, that execution of the sentence is stayed pending proceedings on a timely appeal hereof.

---

**6.** Rosemary Loughery is a 44–year–old college graduate and career businesswoman, most recently employed prior to her arrest as the personnel manager for a 23–store retail chain. She is intelligent and articulate, and does not appear the *naif* her trial strategy presupposes.