**UNITED STATES of America**

v.

**Rosemary LOUGHERY, Appellant.**

**Nos. 87–3103, 89–3094.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 21, 1990.

Decided July 27, 1990.

Edward F. Borden, Jr., Philadelphia, Pa., for appellant.

Eric M. Acker, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Lisa A. Gok, Asst. U.S. Attys., were on the brief, for appellee.

Before BUCKLEY, Circuit Judge, ROBINSON, Senior Circuit Judge, and WILLIAM H. TIMBERS,* Senior Circuit Judge for the Second Circuit.

Opinion for the court filed by Circuit Judge BUCKLEY.

BUCKLEY, Circuit Judge:

Rosemary Loughery appeals the district court's denial of her pre- and post-sentencing motions to withdraw her plea of guilty to one count of conspiracy to violate the Arms Export Control Act. We hold that the district court did not abuse its discretion when it denied Loughery's pre-sentence motion to withdraw her plea. We find, however, that Loughery was deprived of effective assistance of counsel. We therefore reverse the district court's denial of Loughery's post-sentence motion.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

## I. Background

On May 26, 1987, Loughery and a co-defendant, Kevin Paul Gilday, were charged in a ten-count indictment with one count of conspiracy to export arms to Syria in violation of the Arms Export Control Act, 22 U.S.C. § 2778 (1988), and with nine counts of mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343 (1988) ("mail fraud counts"). The mail fraud counts each alleged that the defendants devised and attempted to execute a scheme "to defraud the United States of the right to conduct its lawful business affairs and implement the foreign policy of the United States of America free from stealth, chicanery, false statements, fraud and deceit." At her arraignment, on June 25, 1987, Loughery entered a plea of not guilty.

Prior to her indictment, Loughery received an unsolicited plea bargain proposal from the government, which she rejected. After her arraignment, Loughery and her attorney, Francis Hartman, met with the prosecutor, Assistant United States Attorney Biros. Biros again proposed a plea bargain under which Loughery would plead guilty to the conspiracy count and cooperate with the government's prosecution of her co-conspirators in exchange for the dismissal of the nine mail fraud counts and a promise from the prosecutor that he would not refer her case for prosecution in other jurisdictions or to the Criminal Tax Division of the Department of Justice. After receiving written confirmation of Biros's offer on July 23, 1987, Loughery met with Hartman to discuss it. Hartman advised Loughery that although she had steadfastly maintained that she was innocent, there was no guarantee that she would be acquitted at trial and that pleading to one count out of ten would significantly reduce her "exposure" to the possibility of a long prison term. On Hartman's recommendation, she accepted the proposed plea bargain.

Loughery was represented at the change-of-plea proceeding, which was held on August 7, 1987, by Hartman's associate, Nancy Smith. Smith later testified that she had accompanied appellant to the hearing and was persuaded that at that time, "she very much still believed that she was innocent, that she had done nothing wrong, but that she had made a decision to enter a plea." At the hearing, the judge asked Loughery whether she had entered into the conspiracy charged in the indictment, to which she answered "yes." The judge then asked her whether she agreed "in substance" with the government's proffer of evidence in the case, to which she also responded "yes." Immediately following the hearing, Loughery met with United States Probation Officer Conrad Harper. At this meeting, Loughery wrote a statement of her "version of what had happened," in which she effectively denied criminal liability and asserted her innocence.

Prior to these events, on June 24, 1987 (the day before Biros renewed his plea bargain proposal), the Supreme Court decided *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987), which held that the mail fraud statute reached only schemes defrauding a victim of money or property, and not "intangible rights." Thus, as the government concedes, under *McNally* the mail fraud counts in Loughery's indictment did not allege a crime. Hartman testified that he did not become aware of the *McNally* case until August 14, 1987, when he received a copy of Gilday's motion to dismiss the mail fraud counts on the basis of *McNally*, and that he had made no effort to advise Loughery of this development.

On September 11, 1987, Gilday pleaded guilty to the conspiracy count pursuant to a plea agreement in which the mail fraud counts were dismissed. Loughery learned of Gilday's plea agreement from a newspaper article. One week later, at a meeting with the prosecutors, she asked Biros why Gilday had been allowed to plead guilty to only one count. Biros explained that because of a change in the law that occurred on June 24, 1987, the government could no longer maintain the mail fraud counts against Gilday.

Upon learning of this, Loughery immediately tried to contact Hartman. According to the evidence, she called Hartman's office that evening (a Friday), but no one answered. She called again early Monday morning and spoke to Smith, as Hartman was on vacation in Europe. Loughery explained that she had learned that there had been some change in the law affecting her case and expressed regret at having entered a plea. Loughery was not able to get an appointment to see Hartman until October 13, 1987. At this meeting, Loughery and Hartman discussed the pros and cons of withdrawing her plea; Loughery told Hartman that she wished to withdraw it, but acquiesced in his recommendation that she wait until Gilday had been sentenced before making a final decision.

On October 27, 1987, Gilday received a prison sentence of twenty months to five

years. Hartman did not move to withdraw Loughery's plea until November 3, 1987, the date set for *her* sentencing (the "pre-sentence motion"). The court requested briefing. On November 24, 1987, the court made the following observations before denying her motion:

> The court notes that even though she told the probation officer she was innocent, the defendant made no attempt for several months to withdraw her plea as improvidently entered. She waited until her co-defendant had been sentenced to a substantial period of incarceration before doing so and, further, until the eve of her own sentencing.
>
> The court finds that the motion to withdraw the plea of guilty is motivated by an apprehension that she will receive a like sentence, contrary to her hopes, although not through any expectations she was given by the government or by the court.

Hearing Transcript ("Tr.") at 6–7. The court sentenced her to two years in prison.

Loughery discharged Hartman, retained new counsel, and appealed the denial of her pre-sentence motion. That appeal was subsequently stayed to allow her to file a renewed motion to withdraw her plea (the "post-sentencing motion"). This motion asserted that her plea was entered without the benefit of effective assistance of counsel because Hartman had failed to apprise her of the *McNally* decision. The court denied the motion, holding that Hartman's performance had not fallen "below an ascertainable 'objective standard of reasonableness.'" *United States v. Loughery*, 723 F.Supp. 1527, 1530 (D.D.C.1989). Loughery now appeals both decisions denying her motions to withdraw her plea.

## II. DISCUSSION

### A. The Pre–Sentence Motion

■ Rule 32(d) of the Federal Rules of Criminal Procedure, as applicable to offenses committed prior to November 1, 1987, provides that

> [i]f a motion for withdrawal of a plea of guilty ... is made before sentence is imposed, ... the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255 [post-sentence relief].

A guilty plea thus may not be withdrawn as a matter of right, although withdrawal

before sentencing is liberally granted. *United States v. Russell*, 686 F.2d 35, 38 (D.C.Cir.1982). Reversal of a district court's denial of a motion to withdraw a plea, however, is uncommon; such a denial will not be disturbed absent an abuse of discretion. *United States v. McKoy*, 645 F.2d 1037, 1038 (D.C.Cir.1981).

■ Considerations relevant to the exercise of this discretion include "the strength of the defendant's reason for withdrawing the plea, including whether [he] asserts his innocence," the possibility of prejudice to the government's case, and the length of time between the plea and the motion to withdraw. *Russell*, 686 F.2d at 39; *United States v. Barker*, 514 F.2d 208, 220–22 (D.C.Cir.) (*en banc*), *cert. denied*, 421 U.S. 1013, 95 S.Ct. 2420, 44 L.Ed.2d 682 (1975). Moreover, the fact that the defendant waited to withdraw her plea until after determining the tenor of the punishment meted out to co-defendants is a factor militating against allowing withdrawal. *McKoy*, 645 F.2d at 1040 & n. 3.

■ Loughery entered her plea on August 5, 1987, but did not move to withdraw it until November 3, 1987, nearly three months later. During this time, her co-defendant Gilday pleaded guilty to the same conspiracy count and was sentenced to a substantial term of imprisonment: twenty months to five years. Hartman explicitly advised Loughery to wait and see what sentence was imposed on Gilday before deciding whether to stand by her plea. Although she wanted to withdraw her plea after she learned of *McNally*, she acquiesced in Hartman's recommendation. It is true that Loughery asserted her innocence both in her pre-sentence motion and at her meeting with the probation officer, and the government did not show that it would have been prejudiced by allowing withdrawal. A defendant may not, however, test "the weight of potential punishment" and then be permitted to withdraw her plea upon finding "the sentence unexpectedly severe." *Id.* By waiting until after Gilday had been sentenced, Loughery prejudiced her motion to withdraw her plea, and the district court acted well within its discretion in denying it.

### B. The Post–Sentence Motion

■ In her post-sentence motion, Loughery argued that her plea was not intelligently made and therefore was invalid because Hartman failed to inform her of *McNally* and its significance. A guilty plea is valid only if voluntarily and intelli-

gently made, "with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970); *accord North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970) (plea must "represent[ ] a voluntary and intelligent choice among the alternative courses of action open to the defendant"). The decision whether to plead guilty must be made by the *defendant* after consultation with counsel. *See American Bar Association, Standards for Criminal Justice* 4–5.2(a)(i) (2d ed. 1980) (discussing which decisions must ultimately be made by the accused and which by counsel) (*"ABA Standards"*).

■ A plea is not voluntary or intelligent if the advice given by defense counsel on which the defendant relied in entering the plea falls below the level of reasonable competence such that the defendant does not receive effective assistance of counsel. *See Hill v. Lockhart,* 474 U.S. 52, 56–60, 106 S.Ct. 366, 369–71, 88 L.Ed.2d 203 (1985); *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). The Court has developed a two-part test to determine whether the advice of counsel on which the defendant relied in entering her plea sinks to the level of ineffective assistance of counsel under the Sixth Amendment. First, " 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.' " *Hill,* 474 U.S. at 57, 106 S.Ct. at 369 (quoting *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)). Second, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* 474 U.S. at 59, 106 S.Ct. at 370. The Court defined a reasonable probability as "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■ The proper measure of an attorney's performance is "reasonableness under prevailing professional norms." *Id.* at 688, 104 S.Ct. at 2065. "Prevailing norms of practice," such as those reflected in the *ABA Standards,* may inform our determination of what is reasonable. *Id.* Specifically, counsel must "inform[ ] himself ... fully on the facts and the law," thoroughly advise the client "concerning all aspects of the case," and "keep the client informed of

... developments in the case." *ABA Standards* 4–3.8, 4–5.1(a); *see Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064.

The Supreme Court directs that our "scrutiny of counsel's performance must be highly deferential" to avoid holding counsel incompetent because of reasonable strategic or tactical judgments which, with the benefit of hindsight, might prove not to have best served his client's interests. *Id.* at 689, 104 S.Ct. at 2065. Thus, "the defendant must overcome the presumption" that his counsel's actions "might be considered sound trial strategy." *Id.* (internal quotes omitted). We must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690, 104 S.Ct. at 2066. To that end, the defendant

> must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.

*Id.* Given the considerable discretion to be afforded counsel, a defendant is more likely to prevail on an ineffective assistance of counsel claim where the error he points to arises from counsel's lack of diligence rather than the exercise of judgment. 2 W. LaFave & J. Israel, *Criminal Procedure* § 11.10(c), at 44 (Supp.1990). "Courts will far more readily find incompetency where there has been an abdication—not an exercise—of professional judgment." *Id.* (internal quotes omitted).

Applying these principles to the facts of this case, we hold that Hartman's conduct fell below the minimum reasonable standard of competence required by the first part of the test. Criminal defense attorneys practicing in the federal courts are expected to keep abreast of Supreme Court decisions affecting their clients' interests. Whether or not Hartman had a duty to learn of the *McNally* decision prior to August 5, 1987, the day Loughery entered her plea, he *did* become aware of the case the following week when he learned that Loughery's co-defendant, Gilday, had

moved to dismiss the mail fraud counts on the basis of *McNally*. At that point, Hartman had a clear duty to advise Loughery of *McNally* and its import.

Hartman testified that it was his practice to forward to his clients copies of documents that he thought were significant. He offered two reasons for his failure to send Loughery a copy of Gilday's motion or to inform her of the *McNally* decision: first, he was not sure whether Gilday's motion would be granted, and second, he felt that the dismissal of the mail fraud counts pursuant to Loughery's plea bargain had obviated any need to concern himself with the validity of those counts. It should be noted that the record does not reveal whether Hartman actually read the *McNally* decision or made any effort to understand its implications, but only that Hartman was made aware of *McNally* as a result of Gilday's motion.

In fact, Hartman's assertion that he did not know whether Gilday's motion would be granted tends to indicate that he had not read *McNally*. Had he done so, he would have (or at least should have) known that the nine mail and wire fraud counts were invalid. These counts charged that the defendants "knowingly devised ... a scheme and artifice to defraud the United States of the right to conduct its lawful business affairs and implement [its] foreign policy ... free from ... fraud and deceit." In *McNally*, the Court held that the mail fraud statute was "limited in scope to the protection of property rights." 483 U.S. at 360, 107 S.Ct. at 2882. The statute thus did not reach schemes to defraud the government of intangible rights such as the right to have its officials conduct their affairs honestly. *Id.* at 358–59 & n. 8, 107 S.Ct. at 2881 n. 8.

Moreover, Hartman's determination that *McNally* and Gilday's motion were of no moment because the mail fraud counts had already been dismissed provides no justification for his failure to inform Loughery of *McNally* and its implications. Hartman knew that one of the key factors inducing Loughery to accept the plea bargain was her belief that by so doing, she would reduce her potential exposure from ten counts and a possible maximum sentence of fifty years in prison to one count with a maximum of five years. As a result of *McNally*'s invalidation of the nine mail and wire fraud counts, Loughery received nothing of value in exchange for her plea.

While a full understanding of *McNally*'s implications might not have affected Hartman's recommendation as to the continued merits of the plea agreement as compared with a withdrawal of the plea, the choice was not his to make. As with the plea agreement itself, only Loughery could decide whether to withdraw her plea in light of *McNally;* her constitutional right to a jury trial was at stake, not Hartman's. Yet she was deprived of this opportunity by Hartman's breach of his duty to keep her informed of material developments.

Neither of the reasons offered by Hartman can excuse his failure. This is not a case where counsel has made a strategic decision that in retrospect, with the benefit of hindsight, appears to have been ill-advised. Rather, Hartman's conduct evinces an abdication of his responsibility to his client, and it is in such cases that courts most typically find that counsel's performance was below the requisite level of competence. *See* 2 W. LaFave & J. Israel, *supra,* § 11.10(c), at 44.

We also find that Loughery has met the second part of the *Hill* test because there is at least a reasonable probability—sufficient to undermine any confidence to the contrary—that but for Hartman's failure to inform her of *McNally* and its implications, she "would not have pleaded guilty [but] would have insisted on going to trial." *Hill,* 474 U.S. at 59, 106 S.Ct. at 370. The dismissal of the nine mail and wire fraud counts was a significant factor in her acceptance of the plea agreement, and she testified under oath that had she known of *McNally* at the time, she would not have accepted the plea agreement. Her testimony in this regard is not contradicted by any evidence in the record. Had she sought to withdraw her plea shortly after Hartman learned of *McNally*, it is quite likely that the district court would have found a motion to withdraw timely and allowed the withdrawal, as in denying her motion, the court noted that she had delayed filing it until after she could learn of the sentence given her co-defendant. Tr. at 6–7; *see Russell,* 686 F.2d at 38. Moreover, because at that point Gilday had not yet entered his plea agreement, there is no reason to believe that Loughery would have waited to withdraw her plea until after Gilday had been sentenced.

The government's argument that Loughery would not have decided to withdraw her plea even if she had been immediately

informed of *McNally* is based on the assertion that it was free under *McNally* to re-indict Loughery on the mail fraud counts by simply alleging that the fraudulent scheme was intended to deprive the government of its property interest in an export license. Regardless of whether the government could have made such an allegation (and there is good reason to believe it could not have), it is clear from the record that this consideration played no part in Hartman's failure to inform Loughery of *McNally* or of Gilday's motion to dismiss the moot fraud counts. In fact, Hartman testified that only later did he consider the possibility that the government might try to re-indict Loughery, but then only for offenses other than mail or wire fraud. Thus, a hypothetical possibility of re-indictment could not have played any part in Loughery's decision over whether to withdraw her plea.

We therefore hold that Hartman's failure to apprise Loughery of *McNally* and its implications after learning of Gilday's motion deprived Loughery of her right to effective assistance of counsel.

### III. CONCLUSION

We hold that the district court did not abuse its discretion in denying Loughery's pre-sentence motion to withdraw her plea. Nonetheless, as we find that Loughery met both tests established by the Supreme Court in *Hill*, we reverse the district court on the issue of ineffective representation and remand for further proceedings consistent with this opinion.

*So ordered.*