UNITED STATES of America, Appellee,

v.

**Willis F. STREATER, Appellant.**

**Nos. 91–3299, 95–3020.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 6, 1995.

Decided Dec. 8, 1995.

As Amended Dec. 21, 1995.

Rehearing and Suggestion for Rehearing In Banc Denied Feb. 5, 1996.

Neil H. Jaffee, Assistant Federal Public Defender, Washington, DC, argued the cause for appellant, with whom A.J. Kramer, Federal Public Defender, was on the briefs.

Michael N. Levy, Assistant United States Attorney, Washington, DC, argued the cause for appellee, with whom Eric H. Holder, Jr., United States Attorney, John R. Fisher, Elizabeth Trosman, Robert J. Meyer, David H. Baum, and Nancy R. Page, Assistant United States Attorneys, were on the brief.

**1316**

Before: EDWARDS, Chief Judge, and HENDERSON and ROGERS, Circuit Judges.

ROGERS, Circuit Judge:

Appellant Willis F. Streater appeals from his conviction of possession with intent to distribute five grams or more of cocaine base and from the denial of his motion under 28 U.S.C. § 2255 to withdraw his guilty plea on the grounds of ineffective assistance of counsel.[1] In both instances he points to fundamental conflicts in the record that he maintains require reversal. We affirm the denial of the motion to suppress the evidence of drugs. But because Streater was denied the effective assistance of counsel when trial counsel gave him incorrect legal advice, which induced him to plead guilty when he otherwise would have gone to trial, his plea was neither voluntary nor intelligent. Therefore, we reverse and remand.

### I.

These appeals arise from Streater's arrest and the subsequent search of his car after he was observed by undercover police officers selling illegal drugs. Streater was indicted in count one for possession with intent to distribute five grams or more of cocaine base, and in counts two and three for possession with intent to distribute cocaine and dilaudid, respectively. 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), (b)(1)(C) (1994). The district court denied his motion to suppress the drugs seized from the passenger compartment and car trunk. Thereafter, Streater entered a conditional guilty plea to count one, and he was sentenced to 210 months in prison, five years' supervised release, and a $50 fine. The plea was entered immediately following a statement to the district court by trial counsel regarding his advice to his client. After sentencing, Streater filed a motion pursuant to 28 U.S.C. § 2255 to set aside his conviction and sentence. The government attached to its opposition to the motion trial counsel's affidavit

on the advice that he had given Streater. The district court denied the motion following an evidentiary hearing at which Streater and trial counsel testified.

### II.

■■■ **Motion to Suppress.** On direct appeal from his conviction, Streater contends that the district court erred in denying his motion to suppress the illegal drugs seized from his car on the ground that the police officers' testimony was inherently incredible. In reviewing a denial of a motion to suppress, we review the legal conclusion of probable cause for a warrantless search *de novo* but will defer to the district court's findings of fact unless clearly erroneous. *United States v. Garrett,* 959 F.2d 1005, 1007 (D.C.Cir. 1992). Notwithstanding troubling conflicts in the officers' testimony, we find no clear error in the district court's decision to believe their version of events.

Metropolitan Police Department Officer Corbett testified at the suppression hearing that he and Officer Myers, both undercover, were in the 1500 block of 11th Street, at about 8 p.m. on March 8, 1991, where they saw Streater and a second person exchange a brown paper bag of plastic bags containing powdered drugs for money in a parked car. Corbett then approached a third person, who was also observing the drug transaction inside the car, and asked him whether he was selling drugs. The third person said he was and directed them to the corner of the street. While the two undercover officers waited at the street corner, the second person got out of the car and walked to the corner. When Corbett asked the second person whether he was selling drugs, he denied that he was and returned to Streater's car. Then Corbett observed the second person "screaming" at Streater, and Streater drove off. Corbett speculated that Streater was a large-quantity drug supplier making a "drop-off" for his "runners" in that area.

1. This court held Streater's direct appeal in abeyance during the pendency of the § 2255 proceeding in the district court. Following the district court's denial of Streater's § 2255 motion, this court consolidated the two appeals by Order of

February 17, 1995. The court has recently abandoned the practice of holding direct appeals in abeyance. *United States v. Lucas,* 67 F.3d 956, (D.C.Cir. Oct. 20, 1995). Streater is represented by new counsel on appeal.

Officer Campbell testified that on the same date at approximately the same time he and Officer Baptista were stationed in the 1100 block of Rhode Island Avenue, when he saw Streater walk up to his car, which was parked in the 1500 block of 11th Street, and drive off. The officers followed Streater, who parked at the corner of R Street and Vermont Avenue and got out of the car. When Sergeant Neill approached in an unmarked police car, Streater started running. Campbell ran after Streater, who dropped keys and money as he ran, and finally apprehended him. Campbell recovered the keys, returned to Streater's car and, by shining a flashlight through the window, saw that "on the transmission hump, there was a cupholder, and inside of a white cup, ... a bundle that looked like a white powdered substance inside of a piece of brown paper." Because Campbell had been informed that Corbett and Myers had observed a drug transaction, and because he knew that drugs are typically wrapped in bundles with rubber-bands, Campbell entered the car and found drugs. Campbell explained that, sometime after Corbett and Myers were in the 1500 block of 11th Street and before he and Baptista had arrived, Officer Simpson had observed Streater get out of his parked car in the 1500 block of 11th Street, take a bag out of the trunk, and leave. Campbell testified that he had first observed Streater when Streater was returning to his car after Simpson had seen him leave.

Conflicting evidence was presented about whether Campbell could actually have seen the drugs inside the car. The conflict was ultimately resolved by the district court's own recreation of the event. During cross-examination, Campbell denied that Streater's car had dark-shaded windows that might have prevented him from looking into the car. Campbell testified that he "stood over the driver's side" of the car and "sh[one] my light on the front windshield inside of the vehicle." Streater called Vernon Taylor, a private investigator, who testified that, when he went to the impoundment lot and staged an experiment with Streater's car, he was only able to look in through the front windshield because all the side windows were shaded dark; he could only see the mock

drugs inside a cup by looking through the windshield on the passenger's side because the steering wheel blocked his view when he was standing on the driver's side of the car. The district court judge examined Streater's car in the courthouse garage and found that the windows were not so tinted that he could not see through them and also that, when looking through the front windshield on the driver's side of the car, he was able to see the area between the two front seats.

Streater also presented two witnesses who had been with him on the same night at approximately the same time. They denied seeing any drug transaction and explained the officers' observations as involving innocent events. According to the defense witnesses, Streater had been sitting in the parked car on 11th Street along with two women friends and another man. After the man had gotten out of the car and walked up the street, one of the women's son had come up to the car to ask for some money. Streater then gave him eight dollars.

Rejecting the defense argument that the arrest and chase were a sham, the district court "credit[ed]" the testimony of officers Corbett and Campbell, and ruled that the police had had probable cause to arrest Streater and that "the search of the automobile was appropriate in connection with the arrest of the defendant." Streater contends that this ruling was error because the finding of probable cause relied on incredible testimony by the government's witnesses. *Cf. Jackson v. United States*, 353 F.2d 862, 866–67 (D.C.Cir.1965). For example, he asserts that it is "not believable" that he and another person would have been engaged in a drug transaction so openly that three persons (the alleged buyer and the two undercover police officers) could observe them, and that the officers would not have called for backup so as to be able to arrest Streater after observing the sale. However, the district court could reasonably conclude that the officers' testimony described illegal drug trafficking and was consistent with the practices of undercover police officers. More persuasively, Streater maintains that the officers' testimony was internally inconsistent. For example, Streater questions how Campbell could have

first seen Streater in the 1500 block of 11th Street, when Corbett testified that Streater had driven off from that location. He likewise questions how Simpson could have seen Streater and his parked car in the 1500 block of 11th Street when Corbett had seen Streater drive off.

The chronology of the events in the 1500 block of 11th Street, compiled from the police officers' testimony, was that (1) Corbett and Myers saw Streater engage in a drug transaction and drive off; (2) Simpson saw Streater go to the trunk of his parked vehicle and walk away; and (3) Campbell and Baptista saw Streater walk up to his car and drive off. If that testimony is credited, as it reasonably could be because there was nothing inherently incredible about it, the only missing link is that, between the first and second events, Streater drove back to the 1500 block of 11th Street and parked his car there again. The district court could properly resolve inferences in the government's favor and reject Streater's assertion that the officers' testimony was inherently incredible. *See Coates v. United States*, 413 F.2d 371, 372–73 (D.C.Cir. 1969). The officers' testimony could have been clearer about the relationship of the various times and places that they saw Streater. But, as the government notes, Campbell testified only that Simpson "was assigned an investigation in the area of 1050 O Street," which is just around the corner from the 1500 block of 11th Street. When Simpson first observed Streater's car, it may have been in the 1000 block of O Street, before he drove to the 1500 block of 11th Street, where Corbett and Myers saw the car. In addition, as the above chronology suggests, Streater could have come to the 1500 block of 11th Street "on two separate occasions." On this record, the inconsistencies are not so glaring that the police officers' testimony "must be a fabrication." *United States v. Gilliard*, 847 F.2d 21, 24 (1st Cir. 1988), *cert. denied*, 488 U.S. 1033, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989). Finally, the inconsistency in Campbell's testimony about the drugs is more apparent than real; he did not initially testify that he saw drugs inside a brown paper bag, but only that he saw bundles of drugs wrapped in brown paper.

The crux of the supposed inconsistencies is that Streater challenges the theory that he could have driven up to the 1500 block of 11th Street again after he had left the first time. Because this was not an implausible theory, the district court was not required to reject it.

### III.

■ **Motion to Withdraw Guilty Plea.** Streater more persuasively contends that the district court erred in denying his motion to withdraw his guilty plea on the ground that it was not made knowingly or voluntarily.

■ When a defendant challenges a guilty plea after sentencing on the ground that his lawyer provided him ineffective assistance, he must demonstrate that (1) his counsel's advice was not " 'within the range of competence demanded of attorneys in criminal cases,' " *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970)), and (2) "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59, 106 S.Ct. at 370. In other words, the two-part standard from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), applies to a collateral attack on the voluntary and intelligent nature of a guilty plea on Sixth Amendment grounds. *See United States v. Horne*, 987 F.2d 833, 835 (D.C.Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 153, 126 L.Ed.2d 115 (1993); *United States v. Loughery*, 908 F.2d 1014, 1018 (D.C.Cir.1990); *United States v. Del Rosario*, 902 F.2d 55, 57 (D.C.Cir.), *cert. denied*, 498 U.S. 942, 111 S.Ct. 352, 112 L.Ed.2d 316 (1990). The district court's findings of fact in the collateral proceeding are reviewed under the deferential "clearly erroneous" standard. *Del Rosario*, 902 F.2d at 58.

■ The first prong of *Hill v. Lockhart* is an inquiry into whether counsel's advice fell below an objective minimum threshold of competence. 474 U.S. at 57, 106 S.Ct. at 369–70 (citing *Strickland*, 466 U.S. at 687–88, 104 S.Ct. at 2064–65). Because the record in

the instant case of trial counsel's incorrect legal advice is manifest, efforts to salvage the situation at the evidentiary hearing by eliciting trial counsel's intended advice could not eliminate the prejudicial deficiency. Although this court will not lightly conclude that the district court's finding of fact is clearly erroneous, when confronted with what trial counsel stated in open court we conclude that the district court clearly erred in finding that trial counsel gave Streater legal advice that was correct "as a practical matter."

Streater's trial counsel first recounted his advice for the district court just before Streater stated that he would accept the government's plea offer. After the district court denied Streater's motion to suppress, trial counsel told the district court that he had advised his client to accept the prosecutor's plea offer. For the court, he stated his advice as follows:

> ... I have explained to him on numerous occasions that United States versus Salvucci, which is at 460 United States Supreme Court [actually 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619], decided June 25, 1980, stands for the proposition that a defendant has either a right of privacy, a primary interest, or a constitutional right in terms of motions to suppress and proceeding with the Fourth Amendment exclusion proffer.

> Therefore, if the motion is denied and the Court rules in the government's favor, the defendant cannot then come to trial and take the position that he was totally unaware of the drugs' presence.

In fact, the case that trial counsel discussed, *United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), overruled the "automatic standing" rule and "limit[ed] the availability of the exclusionary rule to defendants who have been subjected to a violation of *their* Fourth Amendment rights." *Id.* at 95, 100 S.Ct. at 2554–55 (emphasis added). In the part of the opinion possibly relevant to trial counsel's point, the Court noted that *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), prevented the prosecutor from "us[ing]" a defendant's testimony at a sup-

pression hearing as *substantive evidence* at trial." *Salvucci*, 448 U.S. at 93, 100 S.Ct. at 2554 (emphasis added). The Court expressly held open the question of "whether *Simmons* precludes the use of a defendant's testimony at a suppression hearing to *impeach* his testimony at trial." *Id.* at 94, 100 S.Ct. at 2554 (emphasis added). Thus, *Salvucci* is not relevant to the issue of a defendant's changed testimony at the suppression hearing and at trial.

Trial counsel also recounted his advice to Streater in an affidavit that was attached to the government's opposition to Streater's post-sentence motion to withdraw his guilty plea. The affidavit signed by trial counsel stated:

> We discussed the implications of a motion to suppress evidence. I advised him that, by my reading of the *Salvucci* case, he could not assert a privacy interest in the automobile and then, if the evidence was not suppressed, assert at trial that he did not know the drugs were there.

Unless "assert" means "testify" in both instances in the above sentence—in which case *Salvucci* is irrelevant—trial counsel's statement is legally incorrect. The government conceded in its written opposition that the legal advice was incorrect but argued that the error had been cured by the district's court's Rule 11 inquiry advising Streater that trial counsel could present evidence on his behalf. When cross-examined at the § 2255 hearing, trial counsel admitted that his affidavit, like his in-court statement, did not refer to testimony. Later, when asked by the prosecutor, "[D]id you think 'assert' meant file a motion, did you think 'assert' meant testify himself, or did you think 'assert' meant something else?," trial counsel replied, "It simply meant, as I previously stated, that you cannot have it both ways."

At the § 2255 hearing, for the first time, trial counsel described his advice to Streater in terms of changed testimony. Streater testified at the hearing that before entering a guilty plea he had intended to go to trial, to raise the defense "[t]hat I had no knowledge that the drugs were in my car," and to call three prospective witnesses, two of whom had already testified at the suppression hear-

ing. He testified that trial counsel's advice to him after the court denied the suppression motion had been, "if I lose the motion, that I couldn't go to trial and say I had no knowledge that the drugs were in my car." Streater explained that:

> After he told me that, I was—like I said, I was kind of undecided, but once he got up in court and said in court and told the judge that I couldn't do it, then I knew he was serious that I couldn't do it. And I just felt like I didn't have no choice. I didn't have no defense. There was no use to go to trial.

> .    .    .    .    .

> Because if I had to admit that the drugs were in my car, then it seemed to me there was no use of a trial. It was already admitted that I was guilty.

Trial counsel testified thereafter, explaining that he had been wary of Streater because he had anticipated that Streater might later claim ineffective assistance of counsel. He characterized his advice to Streater, prior to the suppression hearing, as follows:

> Well, the conversation was that Mr. Streater had indicated a willingness or a thoughtfulness of testifying at the suppression hearing. And I explained to Mr. Streater that if he testified at the suppression hearing indicating that there were drugs in his automobile and that he would have to give some acknowledgment—and I believe there is talk in the law about proprietary interest or right in whatever property you're trying to have suppressed—that he could not then, if at some point in time this matter was tried, take the stand at his trial and present a defense saying that he had no knowledge that these drugs were in the car, in light of the fact that Mr. Streater told me that the drugs were in the car and that he knew they were in the car.

Thus, trial counsel indicated that he was concerned about testimony at the suppression hearing about a possessory interest in drugs in order to establish Fourth Amendment standing. When asked about his reference at the guilty-plea proceeding to *Salvucci*, trial counsel replied,

> ... I wanted to make it clear on the record that I had explained to Mr. Streater that he couldn't have it both ways. That he couldn't take the stand at the motions hearing and then at some subsequent time testify at a trial that he had no knowledge that the drugs existed.

The district court then interrupted and asked trial counsel:

> The Court: ... The advice you gave him was, as a practical matter, that he could not, as a matter of fact, testify one way at the suppression hearing and then testify diametrically opposed to the testimony he had earlier given when the case came to trial? Is that what you're telling me?
>
> The Witness: Yes.
>
> The Court: You were not telling him that as a matter of law, the law wouldn't let him deny the drugs?
>
> The Witness: No, sir.

The district court, following the testimony by Streater and trial counsel, made the following finding of fact:

> Insofar as the legal advice that Mr. Streater says that he relied upon in making a decision to enter a plea of guilty and, specifically, his instruction with respect to the Salvucci case, I find, as [a] matter of fact, that he was not incorrectly advised, although the advice was perhaps inartfully phrased.

After crediting trial counsel's changed-testimony theory, the district court found that:

> As a practical matter, the advice is entirely correct. Whether or not the significance of the Salvucci case is to that effect, since the Salvucci case purported to render a decision on the law of standing to claim an illegal search and seizure, the practical advice, namely, that inconsistent testimony could not be given with any hope of success at trial, was entirely correct.

The district court's finding crediting trial counsel's testimony that he intended to give Streater legally correct advice is contradicted by the record and, in any event, cannot rehabilitate the erroneous advice that counsel actually gave. When "[d]ocuments or objective evidence ... contradict the witness' story," *Anderson v. City of Bessemer City*, 470

U.S. 564, 575, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985), an appellate court is freer to overturn a finding of fact than if the court is faced solely with a determination of conflicting witnesses' credibility. *Cf. Jackson*, 353 F.2d at 866–67. We conclude that the district court clearly erred in crediting trial counsel's testimony at the § 2255 hearing that he gave Streater correct legal advice when trial counsel's documented contemporaneous statements show the contrary.

First, the evidence on the record—trial counsel's description of his advice at the guilty-plea proceeding and his subsequent affidavit—strongly suggests that trial counsel misunderstood the applicable Fourth Amendment law and thought that Streater had to admit knowledge of the drugs in the car in order to establish standing to move to suppress them. Based on this erroneous premise, trial counsel appears to have concluded that Streater's motion to suppress the drugs precluded him from presenting a "no knowledge" defense at trial. As in *Loughery*, where defense counsel failed to inform his client that the counts in the indictment that the prosecutor was willing to drop as part of a plea bargain were legally infirm, 908 F.2d at 1018, trial counsel failed to provide effective assistance of counsel. While this court remains unwilling to second-guess "reasonable strategic or tactical judgments," *id.* at 1018, trial counsel's erroneous legal advice to Streater on a critical point cannot be excused as a strategic or tactical judgment, but could have sprung only from a misunderstanding of the law.

Second, trial counsel's testimony that he only intended to advise Streater about the perils of changed testimony is entitled to little weight because that advice would have been illogical at the time. Streater never testified at the suppression hearing, nor was there ever any reason for him to testify. As the owner of the car, he had a reasonable expectation of privacy in the car, which gave him Fourth Amendment standing regardless of a possessory interest in the drugs. *Rakas v. Illinois*, 439 U.S. 128, 148–49, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978). When trial counsel put his advice on the record, the suppression hearing had already concluded and, be-cause his client had not testified, there was no reason for trial counsel to be concerned about changed testimony at a future trial. Thus, the record does not support the district court's premise that Streater ever intended to admit knowledge or ownership of the drugs in the car.

Third, even if trial counsel did intend to provide Streater with practical advice about the risks of changed testimony, the "inart-ful[ ] phras[ing]" of counsel's advice demonstrated an inability to communicate what he meant with minimum clarity. The finding that trial counsel provided his client with effective assistance is refuted by a record that shows that it was objectively unintelligible. *See Hill v. Lockhart*, 474 U.S. at 57, 106 S.Ct. at 369–70. Trial counsel did not refer to changed testimony in his in-court statement or in the affidavit he signed for the government. Nor did trial counsel correct the prosecutor's understanding of what his advice to Streater had been. Because the prosecutor understood trial counsel's advice to be as he had stated it in open court, the government conceded in opposing Streater's motion to withdraw his plea that the advice was legally incorrect. Only after probing questioning by the district court at the § 2255 evidentiary hearing did trial counsel reveal that his advice was directed at the perils of changed testimony, rather than at Streater's legal posture at the suppression hearing and at a later trial. As the district court itself noted at the § 2255 hearing, trial counsel's reluctance to testify outright that he had expressed his advice to Streater in a different way from in his in-court statement further corroborates Streater's testimony that he never understood trial counsel to be referring to changed testimony. Faced with this record, the government concedes in its brief that trial counsel's § 2255 testimony is inconsistent with his statements at the plea proceeding and his affidavit. It is little wonder that Streater would have understood trial counsel's advice to be that by seeking suppression of the drugs he had lost his no-knowledge defense.

The government's responses—that trial counsel was concerned about a future ineffec-tive-assistance-of-counsel charge that trial

counsel had prevented Streater from testifying at the suppression hearing and that, had trial counsel so misunderstood Fourth Amendment law, he would have advised Streater to testify at the suppression hearing in order to establish Fourth Amendment standing—both presume that trial counsel's advice to Streater referred to his testifying. If, instead, trial counsel used the word "assert" in his affidavit to refer to taking a litigation position, then the government's theory falls apart. Even at the § 2255 hearing, when trial counsel presented the changed-testimony theory, he was still referring to a "proprietary interest or right in whatever property you're trying to have suppressed." Even if trial counsel had been concerned that Streater would want to testify both at the suppression hearing and at the later trial, there still would have been no reason for him to advise Streater against that course of action unless trial counsel was under the mistaken impression that Streater would have to testify to possession of the drugs to establish Fourth Amendment standing. In cross-examination at the § 2255 hearing, the following exchange occurred:

> Q: And, in fact, ... having been a criminal defense lawyer all those years, you know full well now that a person can assert a privacy interest by filing a motion to suppress and then claim lack of knowledge at trial, is that right?
>
> A: Sure he can if he doesn't testify at the motion.

Even at this late date, trial counsel seems to have mistakenly believed that if Streater testified at the suppression hearing, he would later have to contradict that testimony at trial if he testified as part of a no-knowledge defense. Because the only likely reason for this misconception is that trial counsel thought that contradictory testimony would be necessary to establish Fourth Amendment standing, this exchange further undermines the finding that trial counsel gave Streater correct legal advice.

■ The second prong of *Hill v. Lockhart* requires Streater to show prejudice. 474 U.S. at 59, 106 S.Ct. at 370. The evidence at the § 2255 hearing, as supported by the pre-plea proceedings, shows that Streater intended to go to trial and would have done so but for his trial counsel's advice. *Cf. United States v. Nahodil,* 36 F.3d 323, 326–27 (3d Cir.1994). Streater testified that he had intended to go to trial with his no-knowledge defense. Trial counsel confirmed that Streater had rejected all of the government's plea offers. The record shows that, immediately after denying the suppression motion, the district court deferred jury selection until later that afternoon. When court resumed, trial counsel made his statement for the record of his advice to Streater. The court sent for a jury panel. Trial counsel then informed the court that Streater had "reconsidered" and had decided to enter a guilty plea. During the plea colloquy, however, when the court asked "whether or not the evidence is sufficient to find you guilty of the charge on count one in your judgment," Streater replied, "In my judgment, no." Only after a recess to provide Streater with an opportunity to reconsider did he accept the plea agreement.

Thus, the chronology supports Streater's testimony that he intended to go to trial until he heard his trial counsel's in-court statement after the denial of his suppression motion and perceived that his planned no-knowledge defense was unavailable to him. Unlike *Horne,* in which the defendant never asserted his innocence or mentioned a possible defense, 987 F.2d at 836, Streater, in an affidavit attached to his motion to withdraw his guilty plea, has both asserted his innocence and his intention of pursuing a no-knowledge defense with three identified witnesses. As in *Loughery,* "there is at least a reasonable probability—sufficient to undermine any confidence to the contrary—that but for" Streater's misunderstanding of his right to put on his defense, he would not have pleaded guilty. 908 F.2d at 1019. At trial, the jury would be confronted with a classic credibility contest between the testimony of the police officers and of Streater's companions, and Streater would have the opportunity to highlight some of the potential inconsistencies in the officers' version of events that were discussed in Part II.

For these reasons, there is no need to remand the case, as the government re-

quests, for the district court to make an express prejudice finding. In rejecting the government's request that it make a no-prejudice finding, the district court stated that "I don't think on the basis of what I've heard here I could make a finding that Mr. Streater understood that" he could testify at trial. In the absence of such a finding, the district court could not have found that Streater would still have pleaded guilty even if his counsel had not provided him with incorrect legal advice.

Accordingly, we hold that Streater was denied the effective assistance of trial counsel and that his conviction must be reversed and his case remanded with instructions to grant Streater's motion to withdraw his guilty plea.[2]

---

2. In light of our disposition, we need not reach Streater's contention that the district court's failure to advise him that he was facing a mandatory term of supervised release warrants withdrawal of his guilty plea under Federal Rule of Criminal Procedure 11. See Del Rosario, 902 F.2d at 60.