Timothy G. McGURK, Petitioner,

v.

Donald STENBERG, Attorney General for the State of Nebraska, and Michael Thurber, Superintendent of the Lancaster County Jail, Respondents.

No. 4:95CV3281.

United States District Court,
D. Nebraska.

Oct. 8, 1997.

Dorothy A. Walker, Lincoln, NE, for Petitioner.

Mark D. Starr, Attorney General's Office, John A. Colborn, Lancaster County Attorney's Office, Lincoln, NE, for Respondents.

Donald Stenberg, Lincoln, NE, Pro se.

## MEMORANDUM AND ORDER

KOPH, District Judge.

This matter is before the Court on the Magistrate Judge's Report and Recommendation (filing 27) and the objection to such Report and Recommendation (filing 28), filed as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4. I have conducted, pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4, a de novo review of the portions of the Recommendation to which objections have been made, and I have determined that the Report and Recommendation should be adopted in part.

For the reasons articulated by Magistrate Judge Piester, I adopt the recommendation that Petitioner's petition for writ of habeas corpus should be denied with respect to Petitioner's claims regarding (1) violation of his right to trial by jury, and (2) insufficiency of evidence in Petitioner's enhancement proceedings. As stated by Magistrate Judge Piester, Petitioner's jury claim is procedurally defaulted and Petitioner has expressly abandoned his evidence claim. I note that Respondents have not objected to this portion of Magistrate Judge Piester's Recommendation.

Petitioner's remaining claim is that he received ineffective assistance of counsel when neither the trial court nor his attorney advised him of his right to trial by jury pursuant to *Richter v. Fairbanks*, 903 F.2d 1202 (8th Cir.1990), a ruling which was made before Petitioner's arrest. *Richter* held that a Nebraska statute forbidding jury trials for violations of city and village ordinances, including third-offense DWI violations, was unconstitutional because the possible penalty of 15–year license revocation was a substantial burden on the offender such that it raised Sixth Amendment concerns.

As to this claim, Magistrate Judge Piester recommends that Petitioner's petition for writ of habeas corpus be conditionally granted because (1) counsel's performance was deficient within the meaning of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); (2)(a) the *Strickland* prejudice prong cannot be analyzed because Petitioner's nonjury trial was a nullity under *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993); and (2)(b) although Petitioner has failed to allege that had he been afforded the right to a jury trial, the result of his trial would have been different, *Strickland* prejudice can be presumed from the total denial of Petitioner's right

to choose whether to proceed before a judge or jury under *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

Respondent Stenberg objects to Magistrate Judge Piester's conclusions that counsel's performance was deficient and that prejudice may be presumed (filing 28). As to the deficiency of counsel's performance, Respondent argues that, "The newness of [the *Richter* case], questions about whether it would be binding on state courts, and the fact that it is not something which directly impacts the reliability of the truth-finding function, causes respondent to question whether it is right to label the attorney's performance as constitutionally deficient." (Filing 28 at 1.) As to the presumption of *Strickland* prejudice, Respondent argues that prejudice may only be presumed in cases involving complete denial of counsel or defense counsel who labors under an actual conflict of interest; that is, "cases where it is impossible to gauge the impact of the violation on the ultimate determination of guilt or innocence." (Filing 28 at 2.)

▮ While I agree with Magistrate Judge Piester's assessment of counsel's deficient performance, the first prong of the *Strickland* analysis, I disagree that prejudice may be presumed in this case. While various cases have noted that prejudice may be presumed under *Strickland* under certain circumstances, this case does not involve those circumstances. *Strickland v. Washington,* 466 U.S. 668, 692–93, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (prejudice may be presumed in situations involving (a) actual or constructive denial of assistance of counsel altogether; (b) various kinds of state interference with counsel's assistance; (c) defense counsel who is burdened by an actual conflict of interest); *United States v. Cronic,* 466 U.S. 648, 658–59, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (complete denial of counsel and defense counsel's failure to subject prosecution's case to meaningful adversarial testing are circumstances so likely to prejudice the accused that the cost of litigating their

effect is unjustified); *Williams v. Lockhart,* 849 F.2d 1134, 1137 n. 3 (8th Cir. 1988) (noting in footnote that the Eighth Circuit Court of Appeals has held that malfeasance or nonfeasance of counsel which effectively deprives a defendant of the right to appeal is prejudicial under *Strickland* for purposes of finding ineffective assistance of counsel).

In the absence of clear, direct authority supporting a presumption of *Strickland* prejudice in a case where (1) defense counsel failed to advise the defendant of his right to a jury trial, and (2) the defendant failed to allege that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different had he been offered the choice to have a jury trial, *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. 2052, I shall not expand the categories of circumstances in which *Strickland* prejudice may be presumed.

▮ In this case Petitioner has offered no basis for concluding that the decision-making process during his bench trial was skewed in some way, that his trial strategy would have differed had he elected a jury trial, or that the result of his bench trial would have been different had he been offered the opportunity to have a jury trial. As Magistrate Judge Piester points out, Petitioner *may* have made different arguments, called different witnesses, or presented different evidence had he proceeded before a jury. Petitioner may have even achieved a more favorable result before a jury. However, Petitioner must show that counsel's error "*actually* had an adverse effect" on his defense, and it is "not enough for the [petitioner] to show that the errors had some *conceivable* effect on the outcome of the proceeding." *Strickland v. Washington,* 466 U.S. at 693, 104 S.Ct. 2052 (emphasis added). Petitioner has made no such allegation or showing here.

Because I decline to presume *Strickland* prejudice, and because Petitioner has failed to show that but for counsel's unpro-

fessional errors, the result of his trial would have been different had he been offered the opportunity to have a jury trial, *Strickland v. Washington*, 466 U.S. at 694, 104 S.Ct. 2052, Petitioner's ineffective assistance of counsel claim fails and his petition for writ of habeas corpus should be dismissed in its entirety.[1]

IT IS ORDERED:

1. The Magistrate Judge's Report and Recommendation (filing 27) is adopted in part and rejected in part;

2. Respondents' objection (filing 28) to the Report and Recommendation is sustained to the extent discussed above;

3. Petitioner's petition for writ of habeas corpus is denied and this case is dismissed; and

4. Judgment shall be entered by separate document.

## REPORT AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Before the court for consideration is Petitioner Timothy G. McGurk's petition for writ of habeas corpus. (Filing 1.) For reasons discussed more fully below, I shall recommend that the petition be conditionally granted.[1]

## BACKGROUND

On January 8, 1991, following a non-jury trial in the County Court of Lancaster County, Nebraska, Petitioner Timothy G. McGurk was convicted of driving while under the influence of alcohol (DWI). At a subsequent enhancement hearing the court found petitioner had two prior convictions for driving under the influence of alcohol. As a result, the court sentenced petitioner to a three-month term of imprisonment, fined him five hundred dollars, and ordered him not to drive any motor vehicle

in Nebraska for fifteen years. Petitioner appealed to the District Court of Lancaster County, then to the Nebraska Supreme Court. Both courts affirmed the conviction and sentence.

On December 9, 1992 petitioner filed his first petition for writ of habeas corpus in this court, raising the following three claims:

(1) Petitioner's conviction was obtained in violation of his right to trial by jury as guaranteed by the Sixth Amendment;

(2) Petitioner's counsel failed to preserve and assign as error the violation of petitioner's right to trial by jury; and

(3) Insufficient evidence established the two prior convictions used to enhance petitioner's sentence.

(*See McGurk v. Stenberg, et al.,* 4:CV92–3429, filing 1, at ¶¶ 13–22.). Ultimately, the first habeas petition was dismissed without prejudice, and petitioner returned to state court where he filed a motion for postconviction relief raising the first and second claims. (*See* filing 12.) The County Court of Lancaster County, Nebraska rejected both claims on their merits, and the District Court of Lancaster County, Nebraska affirmed without comment. (Filing 20, ex. D at 13.) In a published opinion the Nebraska Court of Appeals rejected the second claim (ineffective assistance), but did not discuss petitioner's first claim (right to trial by jury). *State v. McGurk,* 3 Neb.App. 778, 532 N.W.2d 354 (1995). McGurk petitioned for further review of his second claim by the Nebraska Supreme Court, but that petition was overruled.

On August 11, 1995 petitioner filed his present petition for writ of habeas corpus. (Filing 1.) The present habeas petition raises the same three claims asserted in his previous habeas petition. (*Id.* at

---

1. Petitioner does not claim that he is actually innocent of the crime.

1. On April 24, 1996 the President signed into law significant habeas corpus amendments (Pub.L. No. 104–132, 110 Stat. 1214 known

as "Title I of the Antiterrorism and Effective Death Penalty Act of 1996"). Because petitioner's case was pending in this court before that date, those amendments do not apply. *Lindh v. Murphy,* 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

¶¶ 14–27.) Following extensive litigation of the events surrounding the dismissal of the earlier petition, this court determined that the petition was not successive and ordered the parties to brief the merits of his claims. (*See* filings 12 and 16.) In his brief on the merits petitioner explicitly abandons his third claim. (Petitioner's Brief in Support of Petition for Habeas Corpus Relief at 1.) Hence, two claims remain for decision: (1) petitioner's right to trial by jury was violated; and (2) petitioner's counsel rendered ineffective assistance by failing to advise him of and preserve his right to trial by jury.

## DISCUSSION

## I. EXHAUSTION AND PROCEDURAL DEFAULT

 In order for a federal court to consider a claim that an aspect of a state conviction violated federal law, that claim must be exhausted. *Castille v. Peoples*, 489 U.S. 346, 349, 109 S.Ct. 1056, 103 L.Ed.2d 380; *Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). The exhaustion requirement is satisfied (1) where the petitioner "fairly presented" his claim to the highest state court, or (2) where the petitioner failed to fairly present his claim to the highest state court and is without an "available" state procedure by which to do so. *Coleman v. Thompson*, 501 U.S. 722, 732, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Picard v. Connor*, 404 U.S. 270, 276–78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

In this case petitioner presented his second claim (ineffective assistance of counsel) to the Nebraska Supreme Court, through a motion for postconviction relief. Hence, that claim is properly before this court. *Coleman, supra.* Respondents argue on the following grounds that petitioner's underlying jury claim is subject to a procedural default: (1) petitioner failed to raise his jury claim on direct appeal; (2) petitioner did not properly present his jury claim to the Nebraska Court of Appeals on the appeal of the denial of his motion for postconviction relief; and (3) petitioner defaulted his claim by failing to present it to the Nebraska Supreme Court in his petition for further review of the denial of his motion for postconviction relief.

## A. FAILURE TO RAISE THE CLAIM ON DIRECT APPEAL

 Nebraska courts will not ordinarily consider in a motion for postconviction relief claims that could have been presented on direct appeal. *See, e.g., State v. El-Tabech*, 234 Neb. 831, 837, 453 N.W.2d 91, 96 (1990). In this case petitioner failed to present his jury claim on direct appeal, which would ordinarily cause the state courts to refuse to consider it. However, "the mere fact that a federal claimant failed to abide by a state procedural rule does not, in and of itself, prevent [federal courts] from reaching the federal claim: '[T]he state court must actually have relied on the procedural bar as an independent basis for its disposition of the case.'" *Harris v. Reed*, 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (quoting *Caldwell v. Mississippi*, 472 U.S. 320, 327, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)). Furthermore, in *Ylst v. Nunnemaker*, 501 U.S. 797, 804–06, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991), the Supreme Court held that in order to determine whether a state relied on a procedural default in rejecting a claim, federal courts must "look through" unexplained state court judgments to the last reasoned decision on an issue. *See id.* at 805, 111 S.Ct. 2590 ("[T]herefore, we begin by asking which is the last *explained* state-court judgment on the *Miranda* claim.") (emphasis in original). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Id.* at 803, 111 S.Ct. 2590.

 Although petitioner raised his jury claim on his appeal from the denial of his

postconviction motion, the Nebraska Court of Appeals did not resolve that claim, but instead focused exclusively on petitioner's claim of ineffective assistance. 3 Neb.App. 778, 532 N.W.2d 354 (1995). In addition, the District Court of Lancaster County, Nebraska affirmed the ruling of the County Court without comment, and the Nebraska Supreme Court did not comment when it overruled his petition for further review. Thus, this court must "look through" those opinions to the decision of the County Court of Lancaster County, Nebraska, which originally decided the issue. *Id.* at 804–06, 532 N.W.2d 354.

Despite petitioner's failure to raise his jury claim on direct appeal, the County Court considered that claim on the merits. (Filing 20, ex. D at 13.) It did not rest its decision on the failure to present the claim on direct appeal, but rather held that petitioner's counsel had implicitly waived his client's right to trial by jury[2] and that petitioner failed to demand a jury trial. (Filing 20, ex. D at 13.) The state court did not rely on defendant's failure to assert his claim on direct appeal, thereby waiving petitioner's default. *Harris,* 489 U.S. at 261–62, 109 S.Ct. 1038. Because none of the courts that considered the issue on appeal of the denial of petitioner's motion for postconviction relief relied on petitioner's failure to raise the issue on direct appeal, that particular default does not prohibit federal review of his claim. *Id.; Ylst,* 501 U.S. at 804–06, 111 S.Ct. 2590.

■■ Additionally, the County Court's determination that petitioner could not assert on postconviction review his jury claim does not bar federal review. While under Nebraska law a criminal defendant must affirmatively demand a jury trial if he or she has only a statutory right to such a trial, *State v. Vernon,* 218 Neb. 539, 541, 356 N.W.2d 887, 889 (1984), here defendant had a constitutional right to a jury. *Richter v. Fairbanks,* 903 F.2d 1202, 1204–06 (8th Cir.1990). Thus, there is no basis in law for concluding that the failure to

demand a jury trial is a procedural default, and consequently, it cannot act as an "adequate and independent" ground for decision precluding federal review. *See, e.g., Ford v. Georgia,* 498 U.S. 411, 423, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) ("Novelty in procedural requirements cannot be permitted to thwart" federal review of constitutional claims); *Ulster County Ct. v. Allen,* 442 U.S. 140, 150–51 & nn. 8–9, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979) (state procedural ruling will not bar review where state law does not "clear[ly]" support the existence of the requirement); *Hansbrough v. Latta,* 11 F.3d 143, 146 (11th Cir.), *cert. denied sub nom.* 513 U.S. 914, 115 S.Ct. 291, 130 L.Ed.2d 205 (1994) (Alabama court's refusal to consider petitioner's appeal was not grounded on a "firmly established, regularly followed" procedural rule and thus could not bar federal review.) Therefore, neither petitioner's initial failure to demand a jury nor his failure to appeal that denial bar review of petitioner's claim that he was denied his right to trial by jury.

## B. PRESENTMENT TO THE NEBRASKA COURT OF APPEALS

Next, respondents argue that on the appeal of the denial of his postconviction motion, petitioner did not properly present to the Nebraska Court of Appeals his jury claim. In order to properly present a claim, a petitioner must provide the state court with a " 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim." *Anderson,* 459 U.S. at 6, 103 S.Ct. 276. Citation to a "case addressing the constitutional basis of the claim[ ] or a discernible reference to a federal constitutional right" is sufficient. *Graham v. Solem,* 728 F.2d 1533, 1535 (8th Cir.), *cert. denied,* 469 U.S. 842, 105 S.Ct. 148, 83 L.Ed.2d 86 (1984).

■ Although the Court of Appeals did not resolve petitioner's jury claim, and although petitioner certainly could have

---

**2.** As noted below, the right to trial by jury is personal and cannot be waived by counsel.

been more focused in presenting his argument to the court, he did explicitly raise the issue in his notice of appeal and his brief. (*See* filing 20, ex. E at 1 and at 13–16.) In fact, the first page of petitioner's brief states, "The trial court erred in failing to grant relief under either ground raised[;] that is, Appellant's conviction is unconstitutional because it was obtained in violation of his sixth amendment right to a jury trial and his sixth amendment right to effective assistance of counsel." (*Id.* at 1.) Although petitioner did intermingle his argument regarding his jury claim with his claim that counsel was ineffective for failing to advise him of it, petitioner's citation to *Richter* and his extensive discussion of his right to a jury, together with his explicit statement that he was appealing the rejection of that right, was more than sufficient to preserve his claim. *See Graham*, 728 F.2d at 1535. Furthermore, the Court of Appeals noted that petitioner raised both claims on appeal. While the court chose to characterize the ineffective-assistance issue as the "essence" petitioner's appeal, it never suggested that petitioner abandoned his underlying jury claim. 532 N.W.2d at 360.

Nevertheless, respondents urge this court to speculate that because the Court of Appeals did not resolve the jury claim, it considered petitioner's claim abandoned. In order for a procedural bar to block federal review, however, the invocation of the state procedural rule must be clearly discernible on the face of the opinion. *Harris v. Reed*, 489 U.S. 255, 261–62, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989). It would clearly be unjust to presume that the state court relied on such a rule when the court did not even mention it and the rule does not even apply. *See id.; see also Coleman*, 501 U.S. at 729–40, 111 S.Ct. 2546 (discussing the problem of determining when a state court rested its decision on a procedural rule). The appeals court, for whatever reason, simply did not resolve the issue. In order to satisfy the exhaustion requirement, a habeas petitioner need not obtain a "precise ruling" on a federal claim so long as it has been raised and

presented. *See Tyler v. Gunter*, 819 F.2d 869, 870–71 (8th Cir.1987). Thus, I conclude that petitioner's jury claim was properly presented to the Nebraska Court of Appeals.

## C. PETITION FOR FURTHER REVIEW

Unlike his appeal to the Nebraska Court of Appeals, in his petition for further review by the Nebraska Supreme Court petitioner focused exclusively on his ineffective-assistance claim. He stated in his brief in support of the petition, "The error that McGurk petitions for review is the finding of the Court of Appeals that although McGurk's trial 'counsel's representation fell below an objective standard of reasonableness,' the court incorrectly applied harmless error analysis to the prejudice prong of the test, which under the facts in McGurk's case, is in error." (Filing 20, ex. D, petitioner's brief at 1) (internal citation omitted). He did not petition for review of the underlying jury claim. Under the peculiar circumstances of this case, I conclude that petitioner relinquished his jury claim by failing to present it to the Nebraska Supreme Court in his petition for further review.

In *Dolny v. Erickson*, 32 F.3d 381, 383–84 (8th Cir.1994), *cert. denied*, 513 U.S. 1111, 115 S.Ct. 902, 130 L.Ed.2d 786 (1995), the Eighth Circuit held that the structure of Minnesota's state judicial system, a system very similar to Nebraska's, did not require presentation of federal claims to the Minnesota Supreme Court to satisfy the exhaustion requirement. Like Nebraska, in all but a few cases Minnesota appellants are entitled as a matter of right solely to review by the Minnesota Court of Appeals. Only a limited number of issues are within the Minnesota Supreme Court's exclusive, non-discretionary appellate jurisdiction. *Id.* In addition, although dissatisfied litigants may petition the Minnesota Supreme Court to review Minnesota Court of Appeals decisions, only a portion of those petitions are heard. The Eighth

Circuit explained that requiring state prisoners to file petitions for further review would not serve the interests of comity, because the Minnesota Supreme Court would be barraged with "burdensome petitions," most of which would prove "fruitless." *Id.* Rather, in order for the filing of a petition for discretionary review to be required for purposes of exhaustion, there must be "a realistic, practical chance" that the state court will consider the case and decide it on the merits. *Id.* As a result, the Eighth Circuit held that presentation of federal claims to the Minnesota Court of Appeals was sufficient to satisfy the exhaustion requirement. *Id.*

■ Nebraska's state judicial structure is almost identical to Minnesota's. Three-judge panels of the Nebraska Court of Appeals hear a wide variety of appeals in civil and criminal matters, and the Nebraska Supreme Court retains exclusive appellate jurisdiction over only a narrow set of cases. Unless an appeal involves the death penalty, life imprisonment, or the constitutionality of a statute, no appeal to the Nebraska Supreme Court exists as a matter of right. Neb.Rev.Stat. § 24–1106(1) (Michie 1995). Parties unsatisfied with a decision of the Court of Appeals may petition for review by the Nebraska Supreme Court, but that review is discretionary and is granted only in limited circumstances. *See* Neb.Rev.Stat. § 24–1106(2)–(3) (Michie 1995). Each year this court reviews numerous federal habeas petitions brought by Nebraska prisoners:

From this court's experience it is rare for the Nebraska Supreme Court to grant further review of routine criminal convictions, and it is rarer still for the state's high court to review decisions of intermediate appellate decisions on postconviction motions. Thus, as in Minnesota, a decision by the Nebraska Court of Appeals "is usually 'the end of the road.'" *Dolny,* 32 F.3d at 384 (quoting *Williams v. Wainwright,* 452 F.2d 775, 777 (5th Cir.1971)). In accordance with *Dolny,* I therefore conclude that in order to satisfy the exhaustion requirement of § 2254, habeas petitioners in custody pursuant to Nebraska criminal convictions are not required to seek further review of Nebraska Court of Appeals decisions. *See id.* That does not end the inquiry in this case, however.

Here, petitioner chose to petition the Nebraska Supreme Court for further review, but raised only his second claim. The court overruled the petition without comment. (Filing 1 at ¶ 9.) Thus, the question arises, does petitioner's failure to petition the court to hear his underlying jury claim constitute a procedural default? After careful consideration of the matter, I conclude that the answer is yes.

While presentation to the Nebraska Supreme Court is not required under *Dolny,* once a petitioner decides to do so, the better rule is that he must present all of his claims.[3] In considering procedural defaults on appeal the Supreme Court has noted,

3. The argument in favor of finding no default is also strong and runs thus: By filing a petition for further review, petitioner provided the state judicial system with an additional opportunity to review his case that was not required by the dictates of procedural habeas corpus. *Dolny,* 32 F.3d at 384. The petitioner did nothing to prejudice the state because further review was not granted. A rule that habeas petitioners who nonetheless file petitions for further review risk losing claims that otherwise have been exhausted would, in effect, punish them for following state procedures, while it would reward hasty litigants who "bypassed" discretionary review altogether. Furthermore, such a rule would not further comity, because it would deter state

prisoners from permitting the state system an additional opportunity to correct its own errors. While state appellate courts have an interest in not being flooded with numerous petitions for review, *id.,* they also have an interest in correcting defects in their own system. *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 10, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). Thus, habeas petitioners should neither be forced to petition for discretionary review nor be punished for doing so.

While this argument is certainly consistent with *Dolny,* ultimately it must be rejected because, as detailed below, it would encourage habeas petitioners to "sandbag" certain claims from state court consideration.

"Each State's complement of procedural rules ... channel[s], to the extent possible, the resolution of various types of questions to the stage of the judicial process at which they can be resolved most fairly and efficiently." [*Reed v. Ross*, 468 U.S. 1, 10, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984).] It is apparent that the frustration of the State's interests that occurs when an appellate procedural rule is broken is not significantly diminished when counsel's breach results from ignorance or inadvertence rather than a deliberate decision, tactical or not, to abstain from raising the claim. Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and "undercut[s] the State's ability to enforce its procedural rules." [*Engle v. Isaac*, 456 U.S. 107, 129, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982).]

*Murray v. Carrier*, 477 U.S. 478, 491, 106 S.Ct. 2639 (1986). Once a petitioner petitions a state's highest court for discretionary review, the petitioner has asked that court to correct an error that allegedly resulted in the conviction. By doing so, he or she allows the state system a further opportunity to correct its own errors. If, however, the petitioner withholds certain claims from review, the state's ability to correct those errors is thwarted. *See Rose v. Lundy*, 455 U.S. 509, 518, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). A contrary rule would allow a federal court to grant a writ for a violation of federal law that had not been presented to every state court which the prisoner petitioned to hear his case, thereby restricting the state's opportunity to grant relief and avoid federal intervention into its affairs. *See id.; see also Castille v. Peoples*, 489 U.S. 346, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989) (rejecting argument that presentation to state's highest court on discretionary review, without presentation to lower state courts, constituted exhaustion).

Exhaustion "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 2, 102 S.Ct. 18, 70 L.Ed.2d 1 (1981). If a prisoner were allowed to "sandbag" some claims by withholding them from a petition for further review, he or she could manipulate the state's system of discretionary review and cause federal courts to harm important principles of comity. The U.S. Supreme Court has rejected similar attempts, noting that "the possibility of 'sandbagging' [does not] vanish[ ] once a trial has ended in conviction, since appellate counsel might well conclude that the best strategy is to select a few promising claims for airing on appeal, while reserving others for federal habeas review should the appeal be unsuccessful." *Carrier*, 477 U.S. at 492, 106 S.Ct. 2639.

The circumstances of this case aptly illustrate this principle. In his petition for further review petitioner raised only his ineffective-assistance claim, which had been properly presented throughout the state system, while withholding from further review his jury claim, a claim which the Nebraska Supreme Court could easily have held to be in default because petitioner failed to present it on direct appeal. Thus, in his petition for further review, petitioner raised the claim on which he had nothing to lose, but withheld the claim for which he risked the foreclosure of federal review in light of his previous default. By doing so, he deprived the Nebraska Supreme Court of an opportunity to grant the relief that he seeks from this court. That situation is not one which comports with a properly considered view of the state's role in enforcing federal rights. *See Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950) ("[I]t would be unseemly in our dual system of government for a federal district court to upset a state court conviction without [affording a full] opportunity to the state courts to correct a constitutional violation"). As a result, I conclude that petitioner defaulted his jury claim by failing to present it to the

Nebraska Supreme Court in his petition for further review.

### D. EXCUSING THE DEFAULT

Before this court may consider a procedurally defaulted claim, the petitioner must excuse the default. In order to do so he or she must demonstrate "cause" for the default and "prejudice" resulting therefrom. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). The existence of "cause" sufficient to excuse a procedural default "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *McCleskey v. Zant,* 499 U.S. 467, 497, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991); *Murray v. Carrier,* 477 U.S. 478, 488 (1986); *Wainwright,* 433 U.S. at 86–7, 97 S.Ct. 2497; *Parkus v. Delo,* 33 F.3d 933, 938 (8th Cir.1994); *cf. Stanley v. Lockhart,* 941 F.2d 707, 709 (8th Cir.) (1991) (cause is something "not fairly attributable" to petitioner). "Prejudice" requires a showing that the failure to raise the defaulted claims worked to petitioner's "actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). If the procedural default is not excused, a federal court may not consider the claim.[4] *Coleman, supra; Murray, supra; Wainwright; supra.*

Ordinarily, ineffective assistance of counsel may serve as cause sufficient to excuse a default; however, it cannot avail petitioner in this instance, because there is no Sixth Amendment right to counsel during postconviction proceedings. *Coleman,* 501 U.S. at 753, 111 S.Ct. 2546; *Carrier,* 477 U.S. at 488, 106 S.Ct. 2639; *Morris,* 83 F.3d at 270. A claim of ineffective assistance of postconviction counsel cannot ex-

cuse a procedural default. *Coleman,* 501 U.S. at 753, 111 S.Ct. 2546; *Carrier,* 477 U.S. at 488, 106 S.Ct. 2639; *Morris,* 83 F.3d at 270; *Cornell v. Nix,* 976 F.2d 376, 381 (8th Cir.1992), *cert. denied,* 507 U.S. 1020, 113 S.Ct. 1820, 123 L.Ed.2d 450 (1993). Thus, the failure of postconviction counsel to raise petitioner's jury claim in his petition for further review cannot serve as "cause" to excuse the default. *See Morris,* 83 F.3d at 270. Petitioner offers no other justification for his failure to present his claim in his petition for further review. As such, I shall recommend it be denied as barred from federal review.

## II. THE MERITS OF PETITIONER'S INEFFECTIVE–ASSISTANCE CLAIM

### A. COUNSEL'S DEFICIENT PERFORMANCE

On May 23, 1990 the Eighth Circuit Court of Appeals held that a person charged under Nebraska law for third-offense DWI must be afforded the right to trial by jury. *Richter v. Fairbanks,* 903 F.2d 1202, 1204–06 (8th Cir.1990). The court declared Nebraska Revised Statute § 24–536 unconstitutional insofar as it prohibited jury trials for charges of third-offense DWI. The court reasoned that the potential penalties of three-to-six months imprisonment and revocation of a driver's license for up to fifteen years "manifested the kind of strong disapproval associated with a serious crime," and as a result, the protections afforded by a jury trial were constitutionally required. *Id.* at 1205 (citing *Blanton v. City of North Las Vegas,* 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989)).

Petitioner was not arrested until September of 1990 and not tried until January 8, 1991, several months after the Eighth Circuit issued the *Richter* decision. It is undisputed that the trial court never

---

4. Petitioner does not argue that he is factually innocent of his crime; thus, he cannot fit within the fundamental-miscarriage-of-justice

exception of *Schlup v. Delo,* 513 U.S. 298, 115 S.Ct. 851, 864, 130 L.Ed.2d 808 (1995).

informed petitioner of his right to a jury trial or obtained a valid waiver of that right. *McGurk*, 532 N.W.2d at 358–60. While respondents argue that counsel implicitly waived that right by going forward with a bench trial, the right to a jury is personal and cannot be waived by counsel. *See Taylor v. Illinois*, 484 U.S. 400, 418 and n. 24, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *United States v. Ortiz*, 82 F.3d 1066, 1070 (D.C.Cir.1996). Furthermore, any waiver of that right must be knowing and voluntary. *Taylor, supra; Adams, supra; Ortiz, supra.* No valid waiver was obtained in this case; therefore, respondent's Sixth Amendment right to a jury trial, as annunciated in *Richter*, was violated. As noted above, however, because this claim is barred by a procedural default, petitioner cannot obtain federal relief unless he prevails on his claim that counsel was ineffective for failing to raise and appeal the jury issue.

■■■■ To establish ineffective assistance of counsel, petitioner must make two showings. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). He first must demonstrate that counsel's performance was deficient, and second, that such deficient performance prejudiced his defense. *Id.* at 687–89, 104 S.Ct. 2052; *Schumacher v. Hopkins*, 83 F.3d 1034 (8th Cir.1996); *Toney v. Gammon*, 79 F.3d 693 (8th Cir.1996). As for the first prong, there must be a showing that the attorney's representation of the petitioner fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687–89, 104 S.Ct. 2052; *Jenner v. Class*, 79 F.3d 736 (8th Cir.), *cert. denied*, 519 U.S. 874, 117 S.Ct. 194, 136 L.Ed.2d 131 (1996). To make such a showing, the petitioner must overcome "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689, 104 S.Ct. 2052. The court must evaluate the performance in light of circumstances as they existed at the time of counsel's conduct and avoid the temptation to second-guess counsel's decisions with the benefit of hindsight. *See Ruff v. Armontrout*, 77 F.3d 265 (8th Cir.), *cert. denied*, 519 U.S. 889, 117 S.Ct. 226, 136 L.Ed.2d 158 (1996); *Garrett v. U.S.*, 78 F.3d 1296 (1996) *supra; Schumacher, supra.* "Given the considerable discretion to be afforded counsel, a defendant is more likely to prevail on an ineffective assistance of counsel claim where the error he points to arises from counsel's lack of diligence rather than the exercise of judgment." *United States v. Loughery*, 908 F.2d 1014, 1018 (D.C.Cir.1990) (citing 2 W.LaFave & J. Israel, *Criminal Procedure* § 11.10(c), at 44 (Supp.1990)).

■■■■ If petitioner establishes that his counsel's representation was objectively unreasonable, he then must demonstrate that it prejudiced his trial. The necessary prejudice will be found only if petitioner demonstrates "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052; *Schumacher, supra.* Simply showing that the outcome of the trial might have been different is insufficient; petitioner must also show that the result of the trial was unreliable or that the proceeding was fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

■■■■ It is undisputed that petitioner's counsel failed to inform petitioner of his right to a jury trial; that he failed to object to the denial of that right by the trial court; and that he failed to raise the issue on direct appeal. *McGurk*, 532 N.W.2d at 358–60.

The State argues that notwithstanding the holding in *Richter*, McGurk's trial counsel performed at least as well as other attorneys in the area at the given time and, therefore, that counsel's performance was not deficient. The State relies primarily on [evidence that at that time other criminal defense attorneys were not demanding jury trials on behalf of their client]. We believe that the

State's analysis is inappropriate in this case.

An attorney has a duty "to investigate the facts of his client's case and to research the law applicable to those facts." *People v. Ledesma,* 43 Cal.3d 171, 222, 729 P.2d 839, 871, 233 Cal.Rptr. 404, 436 (1987). The Eighth Circuit decided *Richter* over 7 months before McGurk's trial, and McGurk's trial counsel could have readily discovered the *Richter* opinion by standard research techniques. In this regard, it has been observed: "Counsel 'is expected ... to possess knowledge of those plain and elementary principles of law which are commonly known by well informed attorneys, and to discover additional rules of law which, although not commonly known, may readily be found by standard research techniques.'" *People v. McCary,* 166 Cal.App.3d 1, 8, 212 Cal. Rptr. 114, 117–18 (1985) (quoting *Smith v. Lewis,* 13 Cal.3d 349, 530 P.2d 589, 118 Cal.Rptr. 621 (1975)). Pursuant to the foregoing, we conclude that an attorney representing a defendant charged with DWI, third offense, whose case was tried in Nebraska in 1991 should have known of or have discovered the rules of law in *Richter* before proceeding to trial with his or her client, notwithstanding the practice of other attorneys. McGurk has established that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. 668, 687–88, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

*McGurk,* 532 N.W.2d at 362–63. I agree in whole with this statement of the Nebraska Court of Appeals. With only a minimal amount of legal research counsel would have discovered that petitioner was entitled to a jury trial. I simply cannot conclude that counsel's failure to research this fundamental principle, advise petitioner of his right to a jury, bring it to the court's attention, and preserve it on appeal did not constitute a deficient performance. *See United States v. Loughery,* 908 F.2d 1014, 1018 (D.C.Cir.1990) (counsel's failure to become aware of recent Supreme Court precedent fell "well below the reasonable minimum standard of competence."); *Black v. Beto,* 327 F.Supp. 1405, 1407 (W.D.Tex.1971) (habeas relief granted because, among other things, counsel failed to protect the petitioner's right to trial by jury).

Respondents argue, based on a lone concurrence of Justice Thomas in *Lockhart v. Fretwell,* 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993), that the Nebraska Supreme Court was not bound by the Eighth Circuit's decision in *Richter.* In *Lockhart,* the Supreme Court ruled that Fretwell could not show prejudice from his counsel's failure to object to an aggravating factor that at the time of his sentencing was invalid under Eighth Circuit precedent, because between the time of his sentencing and the filing of his habeas petition, the Eighth Circuit overruled its own precedent, thereby restoring the validity of the aggravating factor. That is, even though Fretwell's counsel failed to object to the factor, the Eighth Circuit later decided the factor was indeed valid, so Fretwell could not show prejudice resulting from his counsel's deficient performance. In a concurring opinion Justice Thomas wrote separately to express his view that Arkansas would have been free to disregard the Eighth Circuit precedent even if counsel had argued it, because state courts are not bound by lower federal court decisions on federal law. *Id.* at 375–76, 113 S.Ct. 838 (Thomas, J., concurring).

I write separately to call attention to what can only be described as a fundamental misunderstanding of the Supremacy Clause on the part of the [Eighth Circuit] Court of Appeals.

... [T]he Court of Appeals appears to have been under the impression that the Arkansas trial court would have been compelled to follow *Collins* [the Eighth Circuit decision initially holding that the aggravating factor at issue was constitutionally invalid] by the Supremacy Clause.

It was mistaken. The Supremacy Clause demands that state law yield to federal law, but neither federal supremacy nor any other principle of federal law requires that a state court's interpretation of federal law give way to a (lower) federal court's interpretation. In our federal system, a state trial court's interpretation of federal law is no less authoritative than that of the federal court of appeals in whose circuit the trial court is located. *See Steffel v. Thompson,* 415 U.S. 452, 482, n. 3, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974) (Rehnquist, J., concurring); *United States ex rel. Lawrence v. Woods,* 432 F.2d 1072, 1075–76 (C.A.7 1970), *cert. denied,* 402 U.S. 983, 91 S.Ct. 1658, 29 L.Ed.2d 148 (1971); Shapiro, State Courts and Federal Declaratory Judgments, 74 Nw.U. L.Rev. 759, 771, 774 (1979). An Arkansas trial court is bound by this Court's (and by the Arkansas Supreme Court's and Arkansas Court of Appeal's) interpretation of federal law, but if it follows the Eighth Circuit's interpretation of federal law, it does so only because it chooses to and not because it must.

*Lockhart,* 506 U.S. at 375–76, 113 S.Ct. 838. It is this statement upon which respondents rely in arguing that counsel was not ineffective.

I am not persuaded by this argument for two reasons. First, the applicability of Justice Thomas's statement is questionable. His comment was ancillary to the *Lockhart* decision and, thus, clearly dicta. No other Justice, either in the majority or the dissent, joined in Justice Thomas's concurrence or otherwise supported it. While his statement certainly is true with respect to certain civil cases, federal courts have power to review state criminal decisions pursuant to 28 U.S.C. § 2254. Thus, contrary to Justice Thomas's statement, federal courts *do* have the power to correct state-court criminal decisions that violate federally protected rights. Further, two Justices rejected Thomas's view, noting that federal courts possess the power to invalidate state decisions on habeas review. *Id.* at 389, 113 S.Ct. 838 (Stevens, J., dissenting). For these reasons, at least for cases filed before enactment of the new habeas amendments, the validity of Justice Thomas's comment is debatable.[5]

Second, even if the Nebraska courts were free to disregard Eighth Circuit decisions on matters of criminal procedure, that does not change my conclusion that petitioner's counsel was ineffective in this case, because the *Richter* decision still would have provided counsel with a very powerful argument that petitioner was entitled to a jury. In fact, in light of *Richter* the Nebraska Supreme Court subsequently agreed that the Sixth Amendment requires a jury trial for a third-offense DWI. *State v. Wiltshire,* 241 Neb. 817, 491 N.W.2d 324 (1992). In that case the court stated, "A review of [*Richter*] convinces us that Nebraska law no longer comports with federal constitutional principles in this area." 241 Neb. at 821, 491 N.W.2d 324. Therefore, the court followed *Richter* and overruled its own precedents. Clearly, competent counsel would have argued that *Richter* necessitated a jury trial. As petitioner's counsel put it during oral argument to the trial court, to argue that when a federal court declares a statute prohibiting a jury trial unconstitutional, counsel was competent simply because other attorneys also failed to react to the decision "boggles the mind." (Filing 20, ex. K at 18:8–15.) Thus, petitioner has met the first prong of *Strickland.*

## B. RESULTING PREJUDICE

Respondents argue that petitioner cannot show prejudice from the denial of his

---

5. As noted earlier, the recent habeas amendments have no effect on this case, and the new version of 28 U.S.C. § 2254(d), which sets forth a nearly inscrutable standard for federal review of state courts decisions on federal law, does not apply. *See* 28 U.S.C. § 2254(d) (a writ shall not be granted unless the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States").

motion for three reasons: (1) the evidence against petitioner was "overwhelming," and therefore, a jury would have convicted him had it heard the same evidence as the trial judge; (2) petitioner failed to allege he would have exercised his right to a jury trial had he been offered it; and (3) the mere loss of the right to choose a jury does not amount to prejudice. The Nebraska Court of Appeals relied on the first two bases in rejecting petitioner's motion for postconviction relief. *See McGurk,* 532 N.W.2d at 363–365. Each argument is discussed in turn below.

### 1. "Harmless Error" Analysis

In part, the Nebraska Court of Appeals held that petitioner was not entitled to postconviction relief, because in its view counsel's failure to advise defendant of his jury right was "harmless error," therefore precluding a finding of prejudice as the evidence against petitioner was "overwhelming." *McGurk,* 532 N.W.2d at 363–365 (citing *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967) (which first applied harmless error to a constitutional violation)). While most constitutional errors can be subjected to a "harmless error" analysis, some errors cannot. *Arizona v. Fulminante,* 499 U.S. 279, 306–07, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (Rehnquist, C.J., for the court). "The common thread connecting" cases applying harmless error is that they "each involved 'trial error'—error which occurred during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." *Id.* at 307–08, 111 S.Ct. 1246. Although harmless error may be applied where the consequences of the error may be measured in light of the jury's determination, here the error is that petitioner was denied a jury altogether. This claim is far different from those to which harmless error has been applied.

In *Sullivan v. Louisiana,* 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), the U.S. Supreme Court made clear that judges cannot speculate as to what a hypothetical jury might do if it were to decide a case. In *Sullivan,* the trial judge gave an invalid jury instruction on reasonable doubt, but the Louisiana Supreme Court held that the errant instruction was harmless because sufficient evidence existed in the record to find the defendant guilty. By unanimous decision, in no uncertain terms, the Court characterized the utilization of harmless error in this circumstance as an attack on the defendant's Sixth Amendment right to a jury:

> In *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), we found this right to trial by jury in serious criminal cases to be "fundamental to the American scheme of justice," and therefore applicable in state proceedings. The right includes, of course, as its most important element, the right to have the jury, rather than the judge reach the requisite finding of "guilty." *See Sparf v. United States,* 156 U.S. 51, 105–06, 15 S.Ct. 273, 39 L.Ed. 343 (1895). Thus, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the State, no matter how overwhelming the evidence. *Ibid.*
>
> . . . . .
>
> It is self-evident, we think, that the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated. It would not satisfy the Sixth Amendment to have a jury determine that the defendant is *probably* guilty, and then leave it up to the judge to determine (as *Winship* requires) whether he is guilty beyond a reasonable doubt. In other words, the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt.

508 U.S. at 277–78, 113 S.Ct. 2078 (emphasis in original). Based on this understanding, the Court continued,

*Chapman* [v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967),] itself suggests the answer. Consistent with the jury-trial guarantee, the question it instructs the reviewing court to consider is not what effect the constitutional error might generally be expected to have upon a reasonable jury, but rather what effect it had upon the guilty verdict in the case at hand. Harmless-error review looks, we have said, to the basis on which "the jury *actually rested* its verdict." The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee.

Once the proper role of an appellate court engaged in the *Chapman* inquiry is understood, the illogic of harmless-error review in the present case becomes evident. Since, for the reasons described above, there has been no jury verdict within the meaning of the Sixth Amendment, the entire premise of *Chapman* review is simply absent. There being no jury verdict of guilty-beyond-a-reasonable-doubt, the question whether the *same* verdict of guilty-be-yond-a-reasonable-doubt would have been rendered absent the constitutional error is utterly meaningless. There is no *object*, so to speak, upon which harm-less-error scrutiny can operate.

*Id.* at 279–80, 113 S.Ct. 2078 (emphasis in original) (internal citations omitted).

*Sullivan* dictates the conclusion that the Nebraska Court of Appeal's application of the harmless-error analysis was erroneous. In fact, the constitutional violation at issue here is even more significant than that which occurred in *Sullivan:* petitioner was afforded no jury trial whatsoever. Because he was denied his right to trial by jury, "no object [exists] upon-which harm-

less-error scrutiny can operate." *Id.* at 280, 113 S.Ct. 2078. Thus, the nature of the evidence against petitioner has no bearing on whether he was prejudiced by counsel's failure to raise it. *See id.* Therefore, harmless-error analysis is inappropriate.

### 2. Failure To Allege The Right Would Have Been Exercised

Respondents further argue, as the Nebraska Court of Appeals held, that petitioner suffered no prejudice because he did not show that he would actually have demanded a jury and insisted on going forward to trial if afforded that right. 532 N.W.2d at 364–65. This argument rests on *Hill v. Lockhart,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). In *Hill,* the U.S. Supreme Court held that because a habeas petitioner did not allege that he would not have pleaded guilty despite counsel's incorrect advice but in fact would have insisted on going to trial, he could not show "prejudice" from counsel's deficient performance. *Id.* at 59–60, 106 S.Ct. 366 (1985). Upon close scrutiny of the rights at issue, however, I conclude that *Hill* has no application to this case. Total failure of counsel and the court to afford petitioner his jury right is not equivalent to an attempt to set aside a guilty plea, for three important reasons. First, counsel's erroneous advice in *Hill* did not involve a fundamental right; second, unlike a guilty plea, petitioner never waived his right to a jury; and third, the right to a jury trial cannot be waived by implication.

#### a. Nature of the Underlying Rights

■ Ordinarily, claims of ineffective assistance in advising a criminal defendant to plead guilty require courts to determine the "likelihood that [the alleged error] would have led counsel to change his recommendation as to the plea." *Id.* at 59, 106 S.Ct. 366. In *Hill,* the petitioner alleged that his counsel incorrectly advised him of the amount of time he would have to serve before he would be eligible for parole. Because there is no there is no inherent or constitutional right to parole,

*Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), Hill's claim rested solely on the effect of counsel's faulty advise regarding parole eligibility on Hill's decision to enter his guilty plea. However, Hill's ultimate claim had little force because his "mistaken belief that he would become eligible for parole after serving one-third of his sentence . . . affected not only his calculation of the time he likely would serve if sentenced pursuant to the proposed plea agreement, but also his calculation of the time he likely would serve if he went to trial and were convicted." 474 U.S. at 60, 106 S.Ct. 366. Thus, there were "no special circumstances that might support the conclusion that [Hill] placed particular emphasis on his parole eligibility in deciding whether or not to plead guilty." *Id.* As a result, under the circumstances it was doubtful Hill would have pleaded not guilty "but for" counsel's incorrect advice, and he failed to allege anything suggesting otherwise. *Id.*

In this case the right underlying petitioner's claim of ineffective assistance is substantially different. Unlike parole, to which there is not even a constitutional right, the right to trial by jury is "fundamental to the American scheme of justice." *Duncan v. Louisiana,* 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968).

> The framers of the constitutions strove to create an independent judiciary but insisted upon further protection against arbitrary action. Providing an accused with the right to be tried by a jury of his peers gave him an inestimable safeguard against the corrupt or overzealous prosecutor and against the compliant, biased, or eccentric judge. If the defendant preferred the common-sense judgment of a jury to the more tutored but perhaps less sympathetic reaction of the single judge, he was to have it.

*Id.* at 156, 88 S.Ct. 1444. Thus, "no matter how overwhelming the evidence," if charged with a serious crime, the accused is entitled to choose to be tried by a jury of peers. *Sullivan,* 508 U.S. at 277, 113 S.Ct. 2078.

Comparing the rights at issue in *Hill* with this case, it can be seen that the circumstances are quite different. In *Hill,* it was doubtful that counsel's fallacious advice regarding the length of time Hill would serve before being eligible for parole would have caused him to go to trial, and he did not allege any facts suggesting otherwise. 474 U.S. at 60, 106 S.Ct. 366. As such, it is not surprising that his claim was rejected out of hand. In contrast, in this case the right at issue, trial by jury, underlies all other constitutional rights of a criminal defendant. *See Sullivan,* 508 U.S. at 277–78, 113 S.Ct. 2078. Thus, the failure of McGurk's counsel to advise him of and protect that right cannot be rejected out of hand in the same manner as the petitioner's claim in *Hill.* The importance of McGurk's claim is such that it demands closer scrutiny.

**b. The Effect of A Guilty Plea**

This case is also different from *Hill* because the collateral consequences of a guilty plea limit *Hill* 's application. In discussing the grave finality of guilty pleas, the Supreme Court has stated,

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the. entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not [competent].

*Tollett v. Henderson,* 411 U.S. 258, 266–67, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). The acceptance of a guilty plea requires that the defendant be advised by the court of his fundamental constitutional rights, including right to trial by jury, and that he waive them knowingly intelligently and voluntarily. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

In *Hill*, the petitioner had entered his plea and admitted his guilt. By doing so, he also waived his right to trial by jury, among others. Thus, it follows that Hill's allegation that misinformation caused him to enter his plea be regarded with skepticism, for he had already admitted his guilt and now sought to undo the damage from that "solemn" admission. Accordingly, a rule that Hill prove he would not have pleaded guilty and waived his rights but for counsel's erroneous advice seems reasonable.

In contrast, the petitioner in this case was never advised of and never waived his right to trial by jury. Unlike a defendant who pleaded guilty, Petitioner McGurk waived nothing. He never broke the chain by entering a plea and surrendering his rights; thus, he should not be called upon to surmount the same "formidable barrier" erected by a defendant who pleaded guilty. *See Blackledge v. Allison*, 431 U.S. 63, 73–74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977) (a defendant who pleads guilty erects a "formidable barrier" to a later challenge to the validity of his plea). Accordingly, his demonstration of prejudice need not be the same as a defendant who affirmatively waived the jury trial right.[6] He need not demonstrate that he would have demanded and exercised a right he never waived.

### c. Implying a Waiver

▮▮▮▮ The right to trial by jury is personal and cannot be waived by another. Any waiver of it must be both knowing and voluntary. *Taylor v. Illinois*, 484 U.S. 400, 418 and n. 24, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 274–78, 63 S.Ct. 236, 87 L.Ed. 268 (1942); *United States v. Ortiz*, 82 F.3d 1066, 1070 (D.C.Cir.1996). Thus, any waiver must be actual and may not be implied. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Waiver of the right to jury trial may never be presumed from a

silent record. *Id.* at 243, 89 S.Ct. 1709; *cf. Boyd v. Dutton*, 405 U.S. 1, 92 S.Ct. 759, 30 L.Ed.2d 755 (1972) ("a trial judge must indulge every reasonable presumption against waiver" of fundamental rights).

Here, neither the trial court nor counsel advised petitioner of his right to trial by jury: he was never given the opportunity to assess whether or not to exercise that right. As a result, rejecting petitioner's claim on the ground that he did not allege that he in fact would have exercised the right is tantamount to inferring a waiver of the right because he failed to demand it. *Boykin*, 395 U.S. at 243, 89 S.Ct. 1709. Petitioner cannot now be said to have, in effect, waived a right of which he was not informed and of which waiver is ordinarily required to be voluntary and knowingly. *Id.* Applying *Hill* would essentially infer from a silent record that petitioner waived his right the right to trial by jury. That cannot legitimately be done. *Id.*

### 3. Actual Prejudice To Petitioner

Having concluded that petitioner's failure to allege he would have demanded a jury does not in itself preclude relief, I next must consider *Strickland*'s requirement whether counsel's failure to advise petitioner of his right to a jury trial prejudiced him. In light of the fact that the trial court also failed to advise petitioner of this right, the inquiry in this context is considerably different than in other instances of ineffective assistance of counsel. I conclude that petitioner is entitled to relief for two alternative reasons: (a) under *Sullivan* petitioner's trial was a nullity; and (b) collateral consequences of the denial of the right to make that choice create a situation in which prejudice must be presumed under *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984).

---

**6.** *Cf. United States v. Cronic*, 466 U.S. 648, 662 n. 31, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (recognizing that the requisite showing of prejudice for an ineffective-assistance claim may be less or even presumed depending on the nature of counsel's deficient performance).

#### a. *Sullivan*

"The right to have the jury, rather than the judge, reach the requisite finding of 'guilty'" is the core of "the American scheme of justice." 508 U.S. at 277, 113 S.Ct. 2078. It underlies all other rights. As noted in *Sullivan*, the right to a finding of guilty by a jury is, in fact, implicit in the right to due process. *See* 508 U.S. at 278, 113 S.Ct. 2078 (citing *In Re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). Accordingly, failure to observe that right is a "structural defect" rendering the proceedings a nullity. *Id.* at 281–82, 113 S.Ct. 2078.

In this case both the trial judge and counsel failed to advise or preserve petitioner's right to trial by jury. In such circumstances the normal requirement of *Strickland* that a petitioner prove a reasonable probability that the result would have been different is inapposite. "[T]he jury guarantee" is "'a basic protection[n]' whose precise effects are unmeasurable, but without which a criminal trial cannot reliably serve its function." 508 U.S. at 281, 113 S.Ct. 2078 (quoting *Rose v. Clark*, 478 U.S. 570, 579, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)). Thus, because the failure of both court and counsel to preserve this right rendered the proceedings a nullity, there is nothing against which to apply the *Strickland* prejudice prong. An analysis of prejudice cannot occur because there is no "result" against which to compare counsel's failure.

That this is so becomes apparent if petitioner's defaulted jury claim is observed. Under *Richter*, the grant of a new trial for the violation of the right to trial by jury is automatic. *See* 903 F.2d at 1205–06. While the petitioner in *Richter* demanded a jury, the Eighth Circuit's decision is void of any analysis of whether he would have in fact exercised it. It would be odd jurisprudence for a federal court to automatically grant a writ where the jury right is violated, regardless of any inquiry into whether the petitioner would have actually exercised that right, but deny the writ in the context of ineffective assistance because the petitioner did not indicate whether he would have exercised the right had the trial court or counsel informed him of it. That result would be at odds with *Sullivan*. As such, the *Strickland* prejudice inquiry cannot occur under the highly peculiar facts of this case, because the proceedings were a nullity. 508 U.S. at 280–82, 113 S.Ct. 2078.

#### b. Actual Prejudice to Petitioner

Even assuming that the prejudice inquiry is proper, I conclude that despite petitioner's failure to allege he would have exercised his right to a jury, prejudice has been shown. The requisite prejudice in this case arises from the total denial of *the right to choose* whether to proceed before a judge or jury. *Cf. Sullivan*, 508 U.S. at 277, 113 S.Ct. 2078 (the right to choose a jury, rather than a judge, is "fundamental"). That is, the choice itself is fundamental, and the denial of it prejudices the defendant.

Specifically, the failure to afford a criminal defendant the choice of judge or jury affects not only which trier of fact petitioner could proceed before, but also what arguments or facts might have been developed, which witnesses would have been called, and what evidence would have been used. Additionally, in appropriate circumstances the right to choose a jury can be used as leverage to secure a more favorable plea bargain from the prosecution. Thus, not only do important consequences flow from a defendant's choice of which factfinder to proceed before, but the very fact that the petitioner has a choice also has significant consequences.

In this instance the failure to protect that choice creates a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). In *Cronic*, the Court considered situations in which counsel's deficient performance permeated the proceedings. Examples given included the lawyer appointed immediately before a major criminal trial or the lawyer who labored under an actual conflict of interest. *Id.* at 660–62 &

n. 31, 104 S.Ct. 2039. In those situations the harm is so imbedded in the course of the proceedings that it would be difficult, if not impossible, to separate it from the proceedings. *See id.* at 661 n. 28, 104 S.Ct. 2039 (listing cases that characterize the difficulty of disproving a negative). In other words, because the harm in those situations was very likely, but the precise ways they affected the proceedings were difficult to pinpoint, a presumption of prejudice was justified, *See id.* at 658, 104 S.Ct. 2039, and it was proper to place the responsibility for that harm on the state rather than the individual defendants.

There can be little doubt petitioner was prejudiced by the inability to develop different facts and theories that may have appealed to a jury rather than a judge. Moreover, the prosecution may very well have been willing to extend petitioner a favorable plea bargain rather than try him before a jury. "[T]he likelihood that any lawyer" could adequately represent petitioner without the opportunity to choose a jury where entitled to one is "small." *Id.* 659–60, 104 S.Ct. 2039. Like the situations discussed in *Cronic,* the "circumstances are so likely to prejudice [petitioner] that the cost of litigating their effect in [this] particular case is unjustified." *Id.* at 658, 104 S.Ct. 2039. Because the failure of both counsel and the court to afford petitioner infected the entire trial process, the proceedings were fundamentally flawed, and "a presumption of prejudice is appropriate[.]" *Id.* at 659–60, 104 S.Ct. 2039. Consequently, I conclude that petitioner has established his claim. of ineffective assistance of counsel.

For the foregoing reasons,

**IT THEREFORE HEREBY IS REC-OMMENDED** to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), that the petition for writ of habeas corpus, (filing 1), be denied with respect to petitioner's jury claim (Claim 1) and his abandoned evidentiary claim (Claim 3) and be conditionally granted with respect to his ineffective-assistance claim (Claim 2) as follows: Unless within sixty days from the date the judgment becomes final the State of Nebraska vacates petitioner's judgment of conviction for his third DWI offense and grants him a new trial, the writ of habeas corpus will be granted unconditionally.

The parties are notified that unless objection is made within ten days after being served with a copy of this recommendation, they may be held to have waived any right they may have to appeal the court's order adopting this recommendation.

July 25, 1997.